### RICH v. DONEGHEY et al.

No. 8480—Opinion Filed Dec. 3, 1918.

(177 Pac. 86.)

(Syllabus.)

**1. Oil and Gas—Lease—Consideration—Termination — Mutuality — Surrender — "Tenancy at Will."**

The owners of a tract of 60 acres of land executed an instrument, denominated an oil and gas lease, by the terms of which they granted, demised, leased, and let the same to another, his heirs, executors, administrators, and assigns, for the sole and only purpose of mining and operating for oil and gas, and of laying pipe lines, and of building tanks, power stations, and structures thereon, to procure and take care of said products. The grant was for a term of five years from date and as long thereafter as oil or gas, or either of them, was produced by said party. The instrument recited a consideration of $1 paid by the lessee to the lessors. The lessee agreed to deliver to lessors one-eighth of the oil produced and saved from the premises; to pay certain stipulated sum per annum for each gas well, and for gas utilized from each oil well. The lessee further agreed to complete a well on said premises within six months, or pay at the rate of $15 for each additional month such completion was delayed. The instrument contained the further provision that the lessee should have the right at any time, on payment of $1 to the lessors, to surrender the lease for cancellation, after which all payments and liabilities thereafter to accrue under and by virtue of its terms should cease and determine. In an action by the owners of the land to cancel the instrument and remove same as a cloud on their title commenced prior to the expiration of the term of five years, it appearing that no well had been commenced, but that the lessee had made timely payments or tender of all sums stipulated to be paid for delay in completing a well, held, (a) that the consideration recited in the face of the instrument is sufficient to support the grant of the exclusive right to occupy the land and explore the same for oil and gas and to take and remove such as may be found therein for the entire term specified, and also the right of the lessee, on compliance with the conditions expressed, to terminate the same; (b) that the agreement is not void for the want of mutuality; (c) that, although no well had been commenced on the premises, the lessors had not the option to refuse timely tender of payments for delay in completing a well and terminate the grant, or to compel a surrender thereof; (d) that the instrument does not create a tenancy at will within the operation of the rule that an estate at the will of one party is equally at the will of the other.

**2. Case Overruled.**

Brown v. Wilson, 58 Okla. 392, 160 Pac. 94, L. R. A. 1917B, 1184, on the questions herein decided, is overruled.

Owen, J., dissenting.

Error from District Court, Pontotoc County; Geo. C. Crump, Judge.

Action by M. P. Doneghey and others against Fred S. Rich. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

West, Sherman & Davidson, for plaintiff in error.

Prichard & Allen, for defendants in error.

MILEY, J. This action was commenced in the court below on the 9th day of September, 1915, by defendants in error as plaintiffs therein, to cancel and remove, as a cloud upon their title to a certain tract of 60 acres of land an oil and gas lease which they had executed thereon and delivered to the plaintiff in error, defendant below, on the 20th day of December, 1914. There was judgment for the plaintiffs, to reverse which this proceeding in error was prosecuted. The pertinent provisions of the lease are as follows:

"Agreement, made and entered into the 29th day of December, 1914, by and between M. P. Doneghey and Sallie Doneghey, of Ada, Okla., party of the first part, lessors, and Fred S. Rich, of Oil City, Pa., party of the second part, lessees,

"Witnesseth, that the said party of the first part, for and in consideration of the sum of one dollar to them in hand well and truly paid by the said party of the second part and receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the party of the second part to be paid, kept and performed, have granted, demised, leased, and let, and by these presents do grant, demise, lease, and let, unto the said second party, his heirs, executors, administrators, successors, or assigns, for the sole and only purpose of mining and operating for oil and gas, and for laying pipe lines, and of building tanks, powers, stations, and structures thereon, to procure and take care of said products, all that certain tract of land situated in the county of Pontotoc, state of Oklahoma, described as follows, to wit: The south half (½) of the northwest quarter (N. W. ¼) of the northwest quarter (N. W. ¼) of the northwest quarter (N. W. ¼) of section 28, township 4 north, range 6 east of the Indian base and meridian, and containing sixty (60) acres, more or less.

"It is agreed that this lease shall remain in force for a term of five years from this

date, and as long thereafter as oil or gas or either of them, is produced from said land by the party of the second part, his heirs, administrators, executors, successors or assigns.

"In consideration of the premises, the said party of the second part covenants and agrees:

"First. To deliver to the credit of the first parties, their heirs or assigns, free of cost, in the pipe line to which the wells may be connected, the equal one-eighth part of all oil produced and saved from the leased premises.

"Second. To pay the first party two hundred and no-100 dollars each year in advance for the gas from each well where gas only is found, while the same is being used off the premises, and the first parties to have gas free of cost from any such well for four stoves and twelve inside lights in the principal dwelling house on said land during the same time, at their own risk, by making their own connections with the well.

"Third. To pay the first party for gas produced from any oil well and used off the premises at the rate of fifty dollars per year for the time during which such gas shall be used, said payments to be made each three months in advance.

"The party of the second part agrees to complete a well on said premises within six months from the date hereof, or pay at the rate of fifteen and no-100 dollars for each additional month such completion is delayed from the time above mentioned for the completion of such well until a well is completed; and it is agreed that the completion of such well shall be and operate as a full liquidation of all rent under this provision during the remainder of the term of the lease. * * *

"All payments which may fall due under the lease may be made directly to M. P. Doneghey, of Ada, Okla., or deposited to his credit in Oklahoma State Bank, of Ada, Okla.

"The party of the second part, its successors or assigns, shall have the right at any time, on the payment of one dollar to the parties of the first part, their heirs or assigns, to surrender this lease for cancellation, after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease and determine; provided, this surrender clause, and the option therein reserved to the lessee, shall cease and become absolutely inoperative immediately and concurrently with the institution of any suit in any court of law or equity by the lessee to enforce this lease, or any of its terms, or to recover possession of the leased land or any part thereof, against or from the lessor, his heirs, executors, administrators, successors, or assigns, or any other person or persons. All covenants and agreements herein set forth between the parties hereto shall extend to their successors, heirs, executors, administrators, and assigns."

In his brief the plaintiff in error states the issues made by the pleadings as follows:

"The petition of the plaintiffs, after setting forth the execution and delivery of the lease, alleges:

" 'That said defendant has wholly failed, neglected, and refused to comply with any of the terms, covenants, agreements, and conditions of said lease contract in this, that said defendant has made no start or effort to commence a well on said premises, nor. has done or performed any act showing any intention on his part to commence said well; neither has said defendant made payment for the delay in completion of such well, as provided in said contract. That the defendant has never entered upon, nor taken possession of, said premises, but has wholly abandoned the same, and made default of his right, title, or interest to and in said premises.

" '* * * That said lease contract provides that the party of the second part, the defendant herein, shall have the right, at any time, on the payment of one dollar to the parties of the first part, the plaintiffs herein, to surrender this lease for cancellation, after which all payments and liabilities under and by virtue of its terms shall cease and determine; that heretofore, to wit, on the 1st day of September, 1915, the plaintiffs herein sent by registered letter the one dollar provided by said lease to the defendant, with the written request that the said defendant should release of record said contract; that on the 8th day of September, 1915, the said defendant refused to release of record said contract.

" 'Plaintiffs further allege that wells have been sunk on lands adjacent to plaintiffs' said lands, and oil or gas produced in said wells, and gas is being extracted from under the adjacent land, and that it is necessary for plaintiffs to have their said land mined and operated to conserve the oil and gas contained in and under their said land; * * * that plaintiffs will suffer great and irreparable damage and loss by reason of oil and gas being extracted from their said lands through wells now in operation on adjacent land.'

"It is alleged that the lease ought to be canceled as a cloud upon title of plaintiffs, and the prayer is that they have judgment against the defendant canceling said lease upon the grounds stated.

"The defendant answered, denying the allegation of nonpayment of rentals, and alleging affirmatively that he had in fact paid, or tendered, the rentals, as provided in the

lease, and that he had performed, and was performing, all the conditions and requirements of his lease.

"The answer denied that oil or gas was being extracted from adjacent lands; and further set forth that the defendant intended, in good faith and with due and proper diligence, to operate the land for oil and gas, and to protect the same from being drained by exploration or development on the surrounding land, and denied the right of the plaintiffs to the relief prayed for on the grounds stated in their petition."

This statement of the issues is not controverted by defendants in error. The cause came on to be heard by the court upon the issues thus joined. The court made findings of fact to the effect that the lessors, as owners of the land, executed and delivered the lease as above stated; that no well had been drilled or completed on the premises within six months from the date of the lease, but that the first two months' payments accruing, after the expiration of said six months' period, were duly made by lessee and accepted by the lessors; that the payment for the third month was duly tendered by the lessee to the lessors, which they refused to accept, but tendered the lessee the sum of $1 and form of release of said oil and gas lease, and demanded that the lessee execute the same; that the lessee refused to accept the said sum and to execute said release, and deposited the said sum of $15 for the third month's delay to the credit of the lessors in the bank designated as the depositary thereof; that the lessee had deposited all sums accruing under the terms of said lease for delay in completion of a well to the date of the trial in said bank to the credit of the lessors, but which sums had not been withdrawn by them.

The trial court concluded upon the facts so found that, "because of the surrender clause in said lease, the said lease was unilateral and void, and that the lessors, under the terms of said surrender clause, had the right, notwithstanding the payment and tender of rentals, to surrender the same at any time, upon the payment to the lessee of one dollar, and that, having exercised said right they were entitled to have said lease canceled as a cloud on their title to the lands covered by said lease," and judgment was rendered accordingly. There was no finding that the lessee had abandoned the premises, as alleged in the petition; neither was there a finding that the lessee was guilty of negligence in permitting the land to be drained of oil or gas by operations on adjoining premises. There was no finding of fact upon which to base a decree of forfeiture or cancellation of the lease for failure to make payments for delay, or the failure to perform any condition or covenant therein.

The parties agree that the only question to be decided by this court is whether the trial court erred in the conclusions just quoted, decreeing a cancellation of the lease upon the facts found.

In the consideration of the questions presented it will perhaps prove helpful if notice be first taken of the rights of the lessee created by the written instrument in question. At the time of its execution the plaintiffs were the owners in fee simple of the land. By virtue of such ownership they had, on account of the "vagrant and fugitive nature" of the substances constituting "a sort of subterranean ferae naturae" (In re Indian Territory Ill. Oil Co., 43 Okla. 307, 142 Pac. 997), no absolute right or title to the oil or gas which might permeate the strata underlying the surface of their land, as in the case of coal or other solid minerals fixed in, and forming a part of the soil itself. Ohio Oil Co. v. Indiana, 177 U. S. 190, 20 Sup. Ct. 576, 44 L. Ed. 729.

But with respect to such oil and gas, they had certain rights designated by the same courts as a qualified ownership thereof, but which may be more accurately stated as exclusive right and the like, to erect structures on the surface of their land, and explore therefor by drilling wells through the underlying strata, and to take therefrom and reduce to possession, and thus acquire absolute title as personal property to such as might be found and obtained thereby. This right is the proper subject of sale, and may be granted or reserved. Barker v. Campbell Ratcliff Land Co. et al., 64 Okla. 249, 167 Pac. 468, L. R. A. 1918A, 487. The right so granted or reserved, and held separate and apart from the possession of the land itself, is an incorporeal hereditament; or more specifically, as designated in the ancient French, a profit a prendre, analogous to a profit to hunt and fish on the land of another. Kolachny v. Galbreath, 26 Okla. 772, 110 Pac. 902, 38 L. R. A. (N. S.) 451; Funk v. Haldeman et al., 53 Pa. 229; Philips v. Springfield Crude Oil Co., 76 Kan. 783, 92 Pac. 1119. Considered with respect to duration, if the grant be to one and his heirs and assigns forever, it is of an interest in fee. Funk v. Haldeman, supra. An interest of less duration may be granted, and that for a term of years has been denominat-

ed by this court a chattel real. Duff v. Keaton, 33 Okla. 92, 124 Pac. 291, 42 L. R. A. (N. S.) 472. Such right is an interest in land. 14 Cyc. 1144; Heller v. Dailey, 28 Ind. App. 555, 63 N. E. 490. If granted in the homestead of the family, the wife must join in the conveyance. Carter Oil Co. v. Popp, 70 Okla. 232, 174 Pac. 747. A grant thereof is an alienation within the meaning of the acts of Congress removing restrictions (Eldred v. Okmulgee Loan & Trust Co., 22 Okla. 742, 98 Pac. 929), or imposing restrictions (Parker v. Riley, 243 Fed. 42, 155 C. C. A. 572), on the alienation of allotted Indian land, and is a conveyance within the meaning of section 9, Act Cong. May 27, 1908, c. 199 (35 Stat. 315), providing that "no conveyance of any interest of any full-blood Indian heir" in land inherited from any deceased allottee of the Five Civilized Tribes, shall be valid unless approved by the county court. Hoyt v. Fixico Co., 71 Okla. 103, 175 Pac. 517 (decided Oct. 8, 1918).

Bearing these principles in mind, it will at once be seen that by this instrument the plaintiffs granted to the defendant a present vested interest in their land. Brennan v. Hunter, 68 Okla. 112, 172 Pac. 49; Northwestern Oil & Gas vo. v. Branine, 71 Okla. 107, 175 Pac. 533 (decided Oct. 8, 1918). That is, the right for at least five years of mining and operating thereon for oil and gas, which includes, of course, the right to explore therefor, and to extract therefrom and reduce to possession, as their personal property, such as may be found. In other words, it was a grant of the exclusive right, for the time specified, to take all the oil and gas that could be found by drilling wells upon the particular tract of land, with the accompanying incidental right to occupy so much of the surface as required to do those things necessary to the discovery of and for the enjoyment of the principal right so to take oil or gas. No more nor greater right, except perhaps as to duration, with respect to oil and gas, could be granted. Although there had been in terms a purported conveyance of all the oil and gas in the place, yet, by reason of the nature of these substances, no title thereto or estate therein would have vested, but only the right to search for and reduce to possession such as might be found; and when reduced to possession, not merely discovered, title thereto and an estate therein as corporeal property would vest. Kolachny v. Galbreath, supra; Frank Oil Co. v. Belleview Gas & Oil Co., 29 Okla. 719, 119 Pac. 260, 43 L. R. A. (N.

S.) 487; Hill Oil & Gas Co. v. White, 53 Okla. 748, 157 Pac. 710. Though denominated a lease, and in deference to custom will be so referred to herein, the instrument before us, strictly speaking, is not such, but is in effect a grant in presenti of all the right to the oil and gas to be found in the lands described, with the right for a term of five years to enter and search therefor, and, if found, to produce and remove them, not only during said term, but also as long thereafter as either is produced, and to occupy so much of the surface of the land as may be necessary for the purpose of exploration or production, or both.

The trial court held that the contract granting this present vested interest in the land was "unilateral and void." Strictly speaking, a unilateral contract is one in which there is a promise on one side only, the consideration on the other side being executed. Evidently the term was not used in that sense by the trial court, for such contracts are not void, but are equally as valid as bilateral contracts, consisting solely of mutual promises to do some future act, in which the consideration of the promise of one party is a promise on the part of the other. The term "unilateral" is often used to express absence of mutuality. In the case of contracts made up solely of mutual promises, each the consideration for the other, where the promises of one party are so expressed as not to be absolutely binding on him, but to be performed only if such party so wills, or a promise on but one side and no consideration therefor, the one who makes the absolute promise in the one case, or the sole promise in the other, is not bound to perform. The reason sometimes given is that the contract is unilateral, or void for the want of mutuality. The real reason is that there is not a sufficient consideration for the promise. "Consideration is essential; mutuality of obligation is not, unless the want of mutuality would leave one party without a valid or available consideration for his promise." 6 R. C. L. 686. Therefore, what the trial court no doubt meant was that the lessee neither gave nor made a binding promise of anything of value for the grant of the right to explore the land and produce the oil or gas, if any found thereon. In other words, that there was not a sufficient consideration for the grant. In this the court erred.

It is provided by statute in this state that a written instrument is presumptive evidence of a consideration. Section 934, Rev. Laws

1910. Also that the burden of showing a want of consideration lies with the party seeking to invalidate it. Section 935, Id. Any benefit conferred, or agreed to be conferred, upon the lessors by the lessee, to which the lessors were not lawfully entitled, or any prejudice (detriment) suffered, or agreed to be suffered, by the lessee, other than such as he was at the time of the execution of the instrument bound to suffer, is a good consideration. Section 926, Rev. Laws 1910.

Among the considerations expressed in this instrument are the covenants and agreements of the lessee to pay certain stipulated royalties for oil, and for each gas well, and to complete a well within six months, or pay at the rate of $15 for each additional month such completion is delayed. It will be conceded that this agreement to develop, and the prospective royalties, or the monthly payments in lieu of development, standing alone, would constitute a sufficient consideration. But it is contended that under the clause in the instrument conferring on the defendant the option to surrender the lease for cancellation, after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease and determine, the lessee was not bound to perform these promises, or, as it is said, not bound to do anything. This statement would appear to be too sweeping. Instead of not being bound to do anything, the lessee is obligated thereunder to do one of three things: (1) Drill and complete a well in a fixed time, or (2) surrender all his rights and pay in addition the sum of $1, or (3) pay during the term of five years, or until surrender, $15 per month for each additional month the completion of a well is delayed. The lessee cannot escape from all these obligations. He may escape two of them, but he is absolutely bound to do one of the three. If he does the first, and fails to find oil or gas, he will suffer a detriment, and, if oil or gas is discovered, will confer a benefit on the lessor by way of royalties on the oil and gas produced. If he does the second, he will suffer a detriment and confer a corresponding benefit on the lessor. If he does neither of these, he is absolutely obligated to the other, and the amounts agreed to be paid for the delay may be recovered in an action therefor. Cohn v. Clark, 48 Okla. 500, 150 Pac. 467, L. R. A. 1916B. 686; McKee v. Grimm, 57 Okla. 680, 157 Pac. 308. If the lessee should choose to perform what may seem to be the least onerous obligation, and surrender, the lessor will obtain some benefit and the lessee suffer some detriment, at least to the extent of $1. It would seem, therefore, that under these alternative obligations to develop, or surrender, or pay for delay, a consideration is not wanting. The fact that the lessee must pay $1 at the time he exercises the right of surrender should, it would seem, afford ground for distinguishing decisions holding that the lessee was not obligated to anything where, under the leases there under consideration, the lessee was not obligated to pay anything at the time of surrender, or in which it was provided that the lease should terminate and become void as to both parties unless a stipulated sum was paid for delay. But, putting that aside, if we give the surrender clause the sweeping effect claimed, and assume that by virtue thereof the lessee has given no binding promise to drill or pay, or do anything, and treat the instrument as though it recited no promise whatever, or imposed no obligations to pay royalties, and to develop, or pay a fixed sum at stated times in lieu thereof, it does not follow that the instrument is without sufficient consideration. Grants of this character are not dependent for their validity on an agreement to pay royalties and the consequent expressed or implied covenant to develop. They may be for any other consideration agreeable to the parties and valuable in law. The consideration may be wholly executed. Section 930, Rev. Laws 1910. It may be in money only paid at the time of the execution and delivery of the instrument. Such moneyed consideration, in addition to the covenants before referred to, is recited to have been paid and its receipt acknowledged in the face of the instrument. It is true that the amount recited is small, being only $1, but a dollar is the unit of value, and is a thing of value in fact and in the eye of the law; many sales and transactions are had daily in which that sum is the sole consideration. That $1 is a sufficient consideration to support a conveyance of land or an agreement is supported by the overwhelming weight of authority. Lawrence v. McCalmont, 2 How. 426, 11 L. Ed. 326; Davis v. Wells, 104 U. S. 159, 26 L. Ed. 636; Olds v. Marshall, 93 Ala. 138, 8 South. 284; So. Bell T. & T. Co. v. Harris. 117 Ga. 1001, 44 S. E. 885; Mason v. Moulden, 58 Ind. 1; St. Clair v. Marquell, 161 Ind. 56, 67 N. E. 693; Fairley v. Fairley, 34 Miss. 18; Weissenfels v. Cable, 208 Mo. 515, 106 S. W. 1028; Stamper v. Venable, 117 Tenn. 557, 97 S. W. 812; Jacobson v. Nealand, 122 Iowa, 372, 98 N. W. 158; Nave v. Marshall,

9 Ohio Dec. 415; Ferguson's App., 117 Pac. 426, 11 Atl. 885; Watkins v. Robertson, 105 Va. 269, 54 S. E. 33, 5 L. R. A. (N. S.) 1194, 115 Am. St. Rep. 880; Toncra v. Henderson, 3 Litt. (Ky.) 234.

The validity of a conveyance of land upon a consideration of $1 has been recognized by this court. Ehrig v. Adams, 67 Okla. 157, 169 Pac. 645; Henley v. Davis, 57 Okla. 45, 156 Pac. 337. If $1 is sufficient to support a conveyance of the whole estate in land, it necessarily follows that it is sufficient to support a grant of a less interest therein. So if the sole consideration paid for the grant had been the $1 paid as recited in the instrument, it would not follow that the same is, void. While such consideration may appear to be insignificant, and as the sole consideration for the grant may, according to circumstances, be inadequate, yet we are not here concerned with the question of the amount or adequacy of the consideration, but only with the question of whether there is any consideration. The $1 is not the sole consideration, however. It may be urged that it is not the real consideration, but that development and prospective royalties, as has been said in some decisions, were the real or moving consideration. That statement would hardly be accurate here, since the parties agreed that development might be deferred throughout the five-year term, and provided stipulated monthly payments in lieu thereof. It would be more accurate to say that one of the considerations, perhaps the principal one, for the grant was the covenant to develop and yield prospective royalties or pay in lieu thereof. In this connection, it is argued that, by virtue if the surrender clause, the lessee has the option of terminating the lease, and thereby to escape the obligation to develop or pay in lieu thereof, and thus defeat the main purpose or object of the lessor in making the grant, and therefore that it is likewise optional with the lessor to refuse payments for delay and to compel a surrender. To support this argument, the somewhat misleading, though euphonious epigram, "that contracts unperformed, optional as to one of the parties, are optional as to both," is invoked. That rule can have no application here. It applies to contracts consisting entirely of mutual promises wholly executory and unperformed, the promises on one side being the sole consideration for the promises on the other, and in which, if it is optional with one of the parties whether he will perform his promises, it is said that prior to performance of such promises by him it is optional with the other whether he will perform his promises. It is but another way of stating the rule of mutuality before referred to. The epigram, as amended by Mr. Justice Hardy, in Hill Oil & Gas Co. v. White, supra, is a more accurate statement of the true rule. It was there said that "contracts unperformed, without sufficient consideration, which are optional as to one, are optional as to both." As pointed out in Northwestern Oil & Gas Co. v. Branine, supra, the contract here under consideration was not wholly executory and unperformed. So far as the lessors are concerned, the lease was fully executed, and by its terms there was grantd to the lessee an interest in the land to explore the same for oil and gas, and to produce such as might be found, which interest vested immediately upon execution and delivery of the instrument. Nor was the lease wholly unperformed on the part of the lessee with respect to the covenant now under consideration. He had made two of the monthly payments for delay, which had been accepted, and had tendered the payment for the third month before demand was made for cancellation, and has since performed the promise to pay for delay by depositing the amounts due in the designated bank, in strict conformity with the terms of the agreement. However, if it be assumed that the agreement, being fully executed on one side and partly performed on the other, does not make the rule inapplicable, yet the fact that the agreement is founded on an independent consideration, namely, the $1 paid by the lessee at the execution and delivery of the instrument, does have that effect.

In 13 C. J. 336, it is said:

"When there is an agreement founded on a consideration, it is not invalid for the want of mutuality because one party has an option while the other has not, or, in other words, because it is obligatory on one and optional with the other. * * * And the option to relinquish a right acquired under a contract will not render it unilateral."

In 6 R. C. L. 687, it is said:

"An option, supported by a consideration, furnishes another illustration of a contract which is valid notwithstanding the lack of mutuality. It is no objection to the validity of the contract that the holder of the option is under no obligation to exercise it."

These principles have been recognized and applied by this court. Waters-Pierce Oil Co. v. Progressive Gin Co., 59 Okla. 262, 159 Pac. 349. In the case of Northwestern Oil & Gas Co. v. Branine, supra, this court recently held valid a lease in all respects similar to

the one now before us, where a consideration of $160 was paid, and containing covenants for the payment of royalties, for drilling a well within a fixed time, or periodical payments for delay, and providing that the lessee might surrender the same upon payment of $2, after which all payments and liabilities thereinafter to accrue under and by virtue of its terms should cease and determine. In that case we expressly held that, when supported by a sufficient independent consideration, leases of the character here involved are not void for the want of mutuality. The only difference between that case and this is that in this the amount of the consideration is smaller. The cases cannot be distinguished in principle on that ground. The following authorities hold that $1 is a sufficient consideration to bind the lessor in a surrender clause lease such as we have here under consideration: Guffey v. Smith, 237 U. S. 101, 116, 35 Sup. Ct. 526, 59 L. Ed. 856; Brewster v. Lanyon Zinc Co., 140 Fed. 801, 72 C. C. A. 213; Allegheny Oil Co. v. Snyder, 106 Fed. 764, 45 C. C. A. 604; Lindlay v. Raydure (D. C.) 239 Fed. 928; McCullough v. Smith, 243 Fed. 823, 156 C. C. A. 335; Pittsburg, etc., Brick Co. v. Bailey, 76 Kan. 42, 90 Pac. 803, 12 L. R. A. (N. S.) 745; Poe v Ulrey, 233 Ill. 56, 84 N. E. 46; Watford Oil & Gas Co. v. Shipman, 233 Ill. 9, 84 N. E. 53, 122 Am. St. Rep. 144; Central Ohio Nat. Gas & Fuel Co. v. Eckert, 70 Ohio St. 127, 71 N. E. 281; Brown v. Fowler, 65 Ohio St. 507, 63 N. E. 76; Lowther Oil Co. v. Guffey, 52 W. Va. 88, 43 S. E. 101; Lovett v. Eastern Oil Co., 68 W. Va. 667, 70 S. E. 707, Ann. Cas. 1912B, 360; So. Penn. Oil Co. v. Snodgrass, 71 W. Va. 438, 76 S. E. 961, 43 L. R. A. (N. S.) 848; Pyle v. Henderson, 65 W. Va. 39, 63 S. E. 762; Gillespie v. Fulton Oil Co., 236 Ill. 188, 86 N. E. 219.

In Murray v. Barnhart, 117 La. 1023, 42 South. 480, the Supreme Court of Louisiana held a lease invalid which was supported by a consideration of $1. By the provisions of the Code which obtains in that state the consideration for a contract of sale "must be serious": "it must not be out of proportion with the value of the thing," which is a principle of the Civil Law. In the decision of that case the court was careful to distinguish decisions by courts in states where the common law prevails. The court correctly stated that in common-law jurisdictions the rule is "that the slightest consideration is sufficient to support the most onerous oblifation. The inadequacy, as has been said, is for the parties to consider at the time of making the agreement, and not for the

court when it is sought to be enforced," while in their jurisdiction the rule is as above stated. That decision has been followed in that jurisdiction in Jennings-Heywood Syndicate v. Houssiere-Latreille Oil Co., 119 La. 793, 44 South. 501; Long v. Sun Co., 132 La. 601, 61 South. 684, and other cases. For the reasons stated those cases are not authorities in this jurisdiction, where the common-law rule as to consideration governs.

That court does not hold that when a lease providing stipulated royalties to be paid lessors is supported by a consideration sufficient under their law to support a contract—that is, a "serious" consideration, and not out of proportion with the value of the thing—that the same is void for want of mutuality, in that the lessee is not obligated to drill or pay a stipulated sum in lieu thereof. Saunders v. Busch-Everett Co., 138 La. 1049, 71 South. 153, was an action by the lessor against the lessee to annul leases on two different tracts of land, containing, respectively, 1,745 acres and 100 acres, on the ground that same were void for want of mutuality. The leases were for a consideraton of $261.75 and $14.97, respectively, or about 15 cents per acre, and reserved to the lessor one-eighth the oil produced and saved, and lessee agreed to pay $200 per annum for each gas well. There was a condition in each to the effect that, in case a well was not commenced in one year, then the grant should immediately become null and void as to both parties, and provided that the lessee fight prevent such forfeiture from quarter to quarter for five years by paying the lessor the sums of $261.75 and $14.97, respectively, per year until such well was commenced. The leases further provided that, if oil or gas was discovered, then the same should remain in force and effect for 25 years from that date, and as much longer as oil and gas might be produced in paying quantities. The court, in sustaining the leases, held the purpose thereof was to confer the right to drill without imposing an obligation to do so, and after reviewing the provisions of their Code, and the previous decisions of the court, some of which are cited above, held that there was nothing in the purpose or nature of the contract which contravened any law of that state; and further held that, if the transaction be considered a sale, it could not be said, under the circumstances in evidence, that the price (being the payments made at the execution of the lease and subsequently for delay) was not "serious," or "was out of all proportion to the value of the thing."

In Federal Oil Co. v. Western Oil Co. (C. C.) 112 Fed. 373, in the United States Circuit Court, specific performance at the suit of the lessee was refused of a lease reciting a consideration of $1. The lease covered 80 acres of land, provided for the payment to the lessor of a royalty of one-eighth the oil, and $100 per year for each gas well; and further provided that, in case no well was commenced within one day, the lease should become null and void unless the lessee should thereafter pay in advance at the rate of $8.75 for each month such commencement was delayed; and also that a second well should be completed 90 days after first well, and a well each 90 days thereafter until seven were in, then rental to cease. The lessee was given the right to cancel and annul the contract or any part thereof at any time. The lease specified no terms, and provided no limitation of time beyond which commencement of operations could be postponed by the monthly payments. The decision was on a demurrer to the verified bill, in which it was alleged that the interest acquired by the lessee exceeded in value the sum of $2,000. Speaking of the consideration of $1, the district judge said:

"If there was no further consideration which the lessee was bound to yield to the lessors, a court of equity would be bound to refuse the enforcement of the lease. The consideration would be so trifling, compared with the value of the leasehold interest, as to shock the moral sense. An agreement may be enforceable at law, and there may be no sufficient ground for its cancellation in equity; and yet, upon a fair and just consideration of the attendant and collateral circumstances, the court may be satisfied that the contract is unconscionable, and refuse to decree its performance. Before granting a decree the court must be satisfied not only of the existence of a valid contract free from fraud and enforceable at law, but also of its fairness and of its harmony with equity and good conscience; and any fact showing that the contract is unfair, unjust, and against good conscience will justify the court in refusing to decree its performance."

The terms of the lease with reference to development and payments for delay are reviewed in the decision, and it was held on the whole to be so unfair, unjust, and against good conscience as to justify the court in refusing a decree of specific performance, "though the contract might be enforceable at law, and there was no sufficient ground for its cancellation in equity." The decision was affirmed by the Circuit Court of Appeals in Federal Oil Co. v. Western Oil Co., 121 Fed. 674, 57 C. C. A. 428, upon the

ground stated; and also for the further reason that, to afford the relief, "the contract must be such that the court is able to make an efficient decree for its specific performance, and to enforce the decree when made," and "equity will not specifically enforce a contract against one party when it cannot be specifically enforced against the other." Under the terms of the lease in that case, the lessee could not be compelled to either drill or pay even after obtaining a decree and possession thereunder, nor did the lessee in his bill offer performance. Specific performance was refused for that reason by this court in Kolachny v. Galbreath, supra. But these decisions have no application to this case. In the first place, this is not a suit by the lessee for specific performance, but a suit by the lessors for cancellation. The decisions in that case, instead of holding that an oil and gas lease for a consideration of $1 and an agreement to drill or pay for delay, coupled with an option to the lessee to surrender, are invalid and unenforceable at law, or subject to cancellation in equity, by implication hold to the contrary. In addition, there is no allegation or finding here as to the value of the interest acquired by the lessee; therefore it cannot be said in this case that the $1 consideration is "so trifling compared with the value of the leasehold interest as to shock the moral sense," nor is there any allegation or finding here from which the real value can be determined. It may be that the $1 is all or even more than the oil and gas interest is worth.

Furthermore, if this was a suit by the lessee for specific performance, instead of by the lessors for cancellation, or if it should be assumed that the principles upon which Federal Oil Co. v. Western Oil Co. was decided are applicable to a suit for cancellation, the decision would have no application to the facts of this case. In Smith v. Guffey, 202 Fed. 106, 120 C. C. A. 436, the Circuit Court of Appeals, upon the authority of the Federal Oil Co. v. Western Oil Co., supra, denied the lessee equitable relief to enforce or protect his rights under a lease different from the one involved in the case followed, but similar to the one here under consideration. The lease involved in Smith v. Guffey was for a recited consideration of $1 for a term of five years, and as long thereafter as either oil or gas was produced. The lessee covenanted to pay certain stipulated royalties, and to complete a well within nine months, or pay at the rate of 25 cents per acre quarterly in advance for each ad-

ditional three months such completion was delayed. The lease contained a surrender clause providing that the lessee, "upon the payment of one dollar at any time, * * * shall have the right to surrender this lease for cancellation, after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease and determine and this lease become absolutely null and void." But the Supreme Court of the United States on appeal reversed the decision of the Circuit Court of Appeals (Guffey v. Smith, 237 U. S. 101, 35 Sup. Ct. 526, 59 L. Ed. 856). Referring to the contention that the lease was so unfair and inequitable in its terms that relief in equity should be denied the lessee, the court in a unanimous opinion, after detailing the circumstances in which it was given, said:

"The consideration for the lease, viz., $1, paid to the lessor, and the covenants and agreements of the lessee, cannot be pronounced unreasonable. Similar leases, resting upon a like consideration, often have been sustained in cases not distinguishable from this. The lease was to remain in force five years and as much longer as oil or gas was being produced from the premises; in other words, it was to expire in five years unless oil or gas was produced within that time. The lessee expressly covenanted to drill a well within nine months or to pay a rental of 25 cents per acre per year, quarterly in advance, for such time as the completion of the well was delayed beyond that period, the delay, of course, not to extend beyond the primary term of five years. The terms of the covenant doubtless were suggested by the undeveloped conditions of the district and by the expense and risk incident to exploring for oil and gas. They evidently were satisfactory to the lessor at the time, and the record discloses no reason for holding that in the circumstances they were unreasonably liberal to the lessee. Some criticism is directed against the reserved option to surrender, but it is difficult to perceive how it could be declared inequitable. If it was not exercised the lessee would be bound by his covenants, and if exercised the lessor would be free to deal with the premises as he chose. A surrender was not to affect any existing liability, but only to avoid those 'thereafter to accrue.' A like clause is in the subsequent lease, and, according to the evidence and several reported decisions, is of frequent occurrence in such instuments. We conclude that there is nothing in the terms of the lease which requires that equitable relief be withheld."

So, whatever may be said of the soundness of the principles on which Federal Oil Co. v. Western Oil Co. was decided as abstract propositions, it is quite clear that they are no longer applicable in federal equity jurisprudence to leases of the character here under consideration. The same may be said of Huggins v. Daley, 40 C. C. A. 12, 99 Fed. 606, 48 L. R. A. 320, which was a suit in equity by the lessee to enforce his rights under a lease materially different from that here involved. Nor would this court refuse specific performance at the suit of the lessee or of the lease here under consideration for the additional reason above mentioned in the decision of the Circuit Court of Appeals in Federal Oil Co. v. Western Oil Co., supra, and by this court in Kolachny v. Galbreath, supra. Under the surrender clause in the lease now before us, unlike that involved in those cases, it is provided that the option to the lessee to terminate and avoid further liability thereunder shall cease and become absolutely inoperative immediately and concurrently with the institution of any suit in any court of law or equity by the lessee to enforce the same, etc., by the terms of which, upon the commencement of a suit to enforce the lease, the lessee places himself in a position where performance by him can be compelled, and the court can make an efficient decree, and enforce it when made, and not be doing a vain and useless thing. Pucini et al. v. Bumgarner, 71 Okla. 105, 175 Pac. 537 (decided Oct 8, 1918).

For aught that was decided in Kolachny v. Galbreath, supra, or any other case in this court, except Brown v. Wilson, infra, or by the federal courts in the cases cited, the lessee in this lease would be entitled to a decree of specific performance or other equitable relief to enforce or protect his rights acquired thereunder. It has been suggested that Guffey v. Smith, supra, being based upon and following the construction placed upon similar oil and gas leases by the Supreme Court of Illinois, as to the right acquired by the lessee, should be distinguished and not followed in this jurisdiction, because it is asserted that this court has differently defined the character of interest so acquired by the lessee. What was said in Guffey v. Smith as to the character of the interest acquired by the lessee under the Illinois decision related to the discussion pertaining to the nature of the relief the lessee was seeking, and it was decided that because under the Illinois decisions the lessee acquired a present vested right, "a free-hold interest," in the premises, the suit was not one in the nature of specific performance of an executory contract, but in a practical sense one to prevent waste. For that reason, the rule that a contract cannot be specifically enforced in

favor of one, if it cannot be specifically enforced against him, was held by that court not to apply. But the character of the interest of the lessee had no bearing whatever on the question upon which the case is above cited, viz., whether the lease is so unfair and inequitable in its terms that relief in equity should be withheld.

Moreover, there is no substantial difference between the earlier holdings of this court and of the Illinois court as to the character of the interest acquired by the lessee under the instrument here under consideration. We have already defined the character of the right acquired by the lessee under the lease in question. It would prolong this opinion to an unreasonable length to review all the Illinois decisions on the subject and compare the same with what we have said on the subject. The matter is discussed or referred to in the following Illinois cases: Watford Oil & Gas Co. v. Shipman, 233 Ill. 9, 84 N. E. 53, 122 Am. St. Rep. 144; Gillespie v. Fulton Oil & Gas Co., 236 Ill. 188, 86 N. E. 219; Same v. Same, 239 Ill. 326, 88 N. E. 192; Poe v. Ulrey, 233 Ill. 65, 84 N. E. 40; Ulrey v. Keith, 237 Ill. 284, 86 N. E. 696: Bruner v. Hicks, 230 Ill. 536, 82 N. E. 889, 120 Am. St Rep. 332; Daughetee v. Ohio Oil Co., 263 Ill. 518, 105 N. E. 308.

The propositions stated in those cases may be briefly summarized as follows: (1) That oil and gas are not capable of distinct ownership in place; (2) a grant of oil and gas in situ does not vest title thereto, or any estate therein, or pass anything which can be the subject of ejectment or other real action; (3) the lessee, under the form of lease here involved, acquires the right to go upon the premises, erect and maintain all necessary structures, and explore for oil and gas, and, if found, produce them according to the terms of the lease; (4) a lease being a "conveyance of an interest in land," if upon land occupied as a homestead, the wife must join therein; (5) under a lease containing a clause giving the lessee the right to terminate the same at any time, the lessee cannot have a decree of specific performance— all of which is in harmony with the conclusions of this court. In Illinois it is held that a lease for a definite term of years, and as long thereafter as either oil or gas is produced, is "of unlimited duration," and that such lease, giving the right to enter on land and explore for and produce oil and gas, creates a "freehold interest" in the land. This court has not had occasion to determine whether such right should be termed a "freehold interest" or is limited to a term

of years, and therefore "not an incorporeal freehold right in the real estate," as was held by Supreme Court of West Virginia in State v. So. Penn. Oil Co., 42 W. Va. 80, 24 S. E. 688. Whether the right be termed a freehold interest or one for years is of no importance. Under the decisions of the Illinois court and of this court, the substantial rights acquired by the lessee are the same. A statute of Illinois (Hurd's Rev. St. 1905, c. 94, § 7) provides that "when the owner of any land shall convey, by deed or lease, any mining right therein, such conveyance shall be considered as so separating such right from the land that the same shall be taxable separately." It was held in People v. Bell, 237 Ill. 332, 86, N. E. 593, 19 L. R. A. (N. S.) 746, 15 Ann. Cas. 511, that an oil and gas lease for one year, and as long thereafter as oil or gas was found in paying quantities, conveyed a mining right within the meaning of the statute, and was subject to ad valorem taxation separately. In Re Ind. Ter. Ill. Oil Co., supra, while holding an oil and gas lease is property, this court further held that same was not subject to ad valorem taxation separately from the land, our statutes not having so provided. Instead of taxing leases, or such "mining right" ad valorem, by statute in this state a gross production tax is levied in lieu of all other taxes upon leases or mining rights. Chapter 39, Sess. Laws 1916, p. 102; Large Oil Co. v. Howard, 63 Okla. 143, 163 Pac. 537. Therefore the only difference between the decisions of the Illinois court and this court as to the right acquired by the lessee under an oil and gas lease for a definite term, and as long thereafter as oil or gas is produced, is that court has designated such right "a freehold interest in land," while we have designated it "an interest in land," without saying whether such interest amounts to a freehold, and in the two states such interests are taxed by different methods, which results not from a difference in conception of the character of the interest, but from the applicable statutes pertaining to taxation thereof. These differences afford no ground for distinguishing the decisions by the Supreme Court of Illinois, and followed by the court in Guffey v. Smith, that the clause giving the lessee the option to surrender "does not create a tenancy at will, or give the lessor an option to compel a surrender, and does not make the lease void as wanting in mutuality."

There appears to be some conflict in decisions of the several Courts of Civil Appeals of

Texas on the question. There are some decisions by those courts, and there are expressions in others, which support the contention that leases of the character here involved are void for the lack of mutuality. Others of those courts, and all of the expressions of the Supreme Court of that state to which our attention has been called, are to the contrary. In National Oil & Pipe Line Co. v. Teel (Tex. Civ. App.) 67 S. W. 545, two leases were involved. Each recited a consideration of $1 for the payment of certain stipulated royalties, and provided, if operations were not begun and prosecuted with due diligence within two years, that the grant should become null and void, and further provided that the lessee might prevent such forfeiture from year to year by paying in advance $100 until a well was completed. No time was fixed beyond which the commencement of operations could not be deferred and a forfeiture avoided by the payments for delay. The action was by the lessor against the assignee of the lessee to cancel, one of the grounds therefor being the alleged fraud of the lessee in procuring the lease. The Court of Civil Appeals affirmed the decree of the trial court canceling the lease, upon the ground that the contract could not be regarded as a sale, but an option, because the real consideration was the development of the property, for which no definite term was fixed, and that the owners might rescind in the absence of any equities owing to work having been begun, it being held that some time for performance was requisite to an option. It will be noted that the case at bar is distinguishable from that, a fixed time within which a well must be completed being prescribed in the contract here under consideration. However that may be, the Supreme Court of Texas entertained a different view of the questions decided by the Court of Civil Appeals. In their opinion in the case (95 Tex. 586, 68 S. W. 979), on the question of the validity of option contracts, the Supreme Court said:

"A naked agreement, by which one promises to convey to another an interest in land in consideration of money to be paid or acts to be performed by such other, but which does not bind the other to pay or perform the consideration, as the case may be, cannot be enforced. In such case there is a want of mutuality in the agreement. The one party promises to do something; the other does not promise absolutely to do anything; hence there is no consideration to support a contract, and it is void. On the other hand, a promise to give an option is valid if supported by an independent consideration. For example, if a sum of money be paid for the option, the promisee may, at his election, enforce the contract. Each of the contracts in this case purports upon its face to have been executed in consideration of the payment of one dollar; and, though the plaintiff below pleaded that no consideration was paid, there was no evidence that the recitals as to the consideration in the contracts were not true. Whether the recital of 'one dollar,' commonly called a nominal consideration, is sufficient to support the contracts, we need not discuss, though there is very high authority for holding that such recital is sufficient for the purpose."

The court thereupon treated the contracts as if supported by a consideration, and affirmed the judgment on the ground of fraud in the procurement thereof.

In Witherspoon v. Staley (Tex. Civ. App.) 156 S. W. 557, in an action to cancel a mineral lease, the Court of Civil Appeals reversed a judgment denying cancellation, with direction to render judgment for complainants. The lease there involved recited a consideration of $25 paid and certain stipulated royalties, was for a term of five years, and as long thereafter as oil or gas and other minerals were found in paying quantities, and provided that, if operations by drilling or mining were not commenced and prosecuted with due diligence within 60 days, then the grant should become null and void, and also provided that the lessee might prevent such forfeiture from year to year by paying the lessor the sum of $25 every 60 days until opreations commenced. Payments for delay were made for a period expiring January 28, 1911. On that date operations had not been commenced, and no further payments for delay were tendered until January 30, 1911, which the lessor refused to accept, and declared the lease at an end. The court held the lease terminated for failure to commence operations and to comply with the condition to prevent same. There was some language used which has been construed as indicating that the lease was void for want of mutuality, though on a former appeal of the same case another Court of Civil Appeals had expressly held the lease was "not void as being unilateral." Witherspoon v. Staley (Tex. Civ. App.) 138 S. W. 1191. In refusing a writ of error to review the last decision, the Supreme Court (159 S. W. xxiii) made the following notation:

"Refused upon the ground that the contract was forfeited. We do not commit ourselves to the proposition that the contract was void merely because it was a contract for an option, and was unilateral in its char-

acter, as held by the Court of Civil Appeals. Granting that it was unilateral and a mere contract for an option, it may have been enforceable as such a contract because supported by a consideration paid and limited to a definite time."

See Owens v. Corsicana Pet. Co. (Tex. Civ. App.) 169 S. W. 200.

Owens v. Corsicana Pet. Co., supra, was an action by the lessor for cancellation. The lease was of a tract of 188 acres; recited a consideration of $28.20 paid; was for a term of 10 years, and as much longer as oil, gas, and other minerals were produced; provided stipulated royalties to be paid lessor, the lessee agreeing to complete a well in one year or pay $28.20 each three months in advance until the end of the term, or until a well was completed or the lease surrendered; and further provided that the lessee should have the option, upon payment of $5 and all amounts then due thereunder, to surrender the lease for cancellation, and thereafter be discharged from all payments, obligations, and covenants, whereupon the grant should become null and void. The Court of Civil Appeals held the lease void It construed the contract as vesting no interest in the land, but a mere option; that the lessee was not obligated to develop or make the payments for delay, or to do anything except pay $5 under the surrender clause, which sum it held to be merely nominal and no consideration for the grant. The reason for the conclusion reached by that court is perhaps best expressed in the following portion of the opinion on rehearing:

"In this case we think the original payment of $28.20 was a sufficient consideration for the option for the first year, and, since the parties so stipulated, the payment of a like amount was a sufficient consideration for the extension of the lease without development for each three months during which it was paid and accepted, and, in our opinion, appellant could, by the acceptance of said rent at the beginning of each quarter, have bound herself to the end of the term; but, there being no obligation upon the part of appellee to pay the rent, and no binding promise having been made by it to do anything further than to pay $5 and overdue rent whenever it decided to surrender the lease, she was not bound to accept it when tendered at the beginning of any quarter, unless in the meantime appellee had in good faith begun to explore and develop the land."

The Supreme Court, however, granted a writ of error to review the judgment of the Court of Civil Appeals, making the following notation at the time:

"We are of the opinion that the holding that the lease contract was void because unilateral was erroneous. It appears to have been supported by a valuable consideration paid, though it be regarded as a contract for an option and as unilateral in character. A contract to give an option is valid if supported by an independent consideration. We think it questionable, however, whether a contract by which the opposite party agrees to do a definite thing within a limited period, or in lieu of it, to pay a specified amount, can be regarded as unilateral."

See Pierce Fordyce Oil Ass'n v. Woodrum (Tex. Civ. App.) 188 S. W. 245, 249.

In Pierce Fordyce Oil Ass'n v. Woodrum, supra, another of the Courts of Civil Appeals held a lease of a tract of 2,038 acres for a term of one year, and as long thereafter as oil or gas was found in paying quantities, which recited a cash consideration of $1, the lessee agreeing to pay a royalty of one-eighth the oil and gas produced, and to begin operations in six months, or pay 50 cents per acre for delay of an additional six months, and granting the lessee the option to surrender the lease at any time upon the payment of $1, was not void as being unilateral. See, also, Griffin v. Bell (Tex. Civ. App.) 202 S. W. 1035, which was an action to cancel a lease, in which the lessee was not obligated to drill or pay for delay and for which a consideration of $70 was paid. The Court of Civil Appeals affirmed a judgment denying the relief, holding that "the contract was not subject to cancellation on account of its unilateral character on its face, imposing an obligation only on plaintiffs, since mutual promises are necessary only when there is no other consideration."

Notwithstanding some earlier decisions and dictum to the contrary, the later decisions of the Courts of Civil Appeals of Texas, and all of the expressions of the Supreme Court of that state to which our attention has been called, are in harmony with the great weight of authority that leases of the character in question, though development and prospective royalties be regarded as the moving consideration to the lessor, and it is optional with the lessee whether he shall drill, or pay for delay, or surrender and terminate the agreement, are not void for the want of mutuality, when supported by an independent valuable consideration; and also that $1 is a valuable consideration and sufficient to support a contract for an option.

There is no finding that the recital in the instrument under consideration of $1 paid as a consideration was a mere formality—a fiction—and was not a statement of the fact

of the actual payment and receipt of that sum. It may be true that in some instances no consideration was paid or agreed to be paid, though the instrument recites the payment of $1 or other small sum. On the other hand, that is not always the case. Quite a number of decisions will be found in the books where the recited consideration of $1 for leases of tracts of different areas was found to have been actually paid, and others in which, there being no proof to the contrary, it was assumed that such was the case. Therefore we cannot assume in this case that the $1 was not one of the considerations, or that the parties did not contract in reference thereto; and we have no right to disregard the $1, and treat the instrument as though the covenant to develop or pay in lieu thereof was the sole consideration. If they so desired, the lessors had the right to dispose of their property, or any interest therein, for $1; and, having acknowledged that they did so, we will not presume that they did not, because of the agreement that under certain conditions they were to receive a further and greater consideration during the life of the grant. Nor will we assume that the consideration is inadequate. There is no finding to that effect, or of facts or circumstances from which the same can be inferred. Moreover, if it should be assumed that the consideration is inadequate, it would not follow that the lessor was entitled to cancellation. This court has repeatedly held that inadequacy of consideration alone is not sufficient to justify a court of equity in canceling a deed regularly executed. Lewis v. Allen, 42 Okla. 584, 142 Pac. 384; Chandler v. Roe, 46 Okla. 349, 148 Pac. 1026; Miller v. Folsom, 49 Okla. 74, 149 Pac. 1185; Henley v. Davis, 57 Okla. 45, 156 Pac. 337; Welch v. Ellis, 63 Okla. 158, 163 Pac. 321.

In Welch v. Ellis the rule is stated by this court as follows:

"Ordinarily, an adult person of sound mind may dispose of his real estate in any manner and for any consideration he sees fit, and the deed therefor will not be set aside, in the absence of fraud, duress, or mistake. Mere inadequacy of price, or any other inequality in the bargain, does not per se constitute a ground to avoid the bargain. Courts of equity, as well as courts of law, act upon the ground that every person who is not, from his peculiar position or circumstances, under disability, is entitled to dispose of his property in such manner and upon such terms as he chooses; and whether his bargains are wise and discreet, or profitable or unprofitable, are considerations, not for courts of justice, but for the party him-

self, to deliberate upon. 1 Story, Equity Jurisprudence, § 244."

This court in Miller v. Folsom, 49 Okla. 74, 149 Pac. 1185, in an opinion by Justice Turner in a suit to cancel a deed on the ground of incompetency and inadequacy of consideration, said:

"If he was as ignorant of values, as the court inferred, the most that can be said is that plaintiff might be likened to one who becomes the owner of a precious stone of unknown value to him, and who sells it for a small part of its value without informing himself of its actual worth. It goes without saying that he must suffer the result of his own folly, and that a court of equity will not aid him to recover the property for the reason that he was chargeable with the duty to inquire of its worth before making the sale. Plaintiff also might be likened to one who is the owner of a field containing a treasure under its soil of which he was ignorant. It cannot be said that equity will set aside his deed conveying it to one who had purchased it without fraud or undue influence for a small part of its value."

In Eyre v. Potter, 15 How. 42, 14 L. Ed. 592, a suit in equity to cancel a deed, the Supreme Court of the United States, speaking of the question of the adequacy of the consideration to support the conveyance, said:

"The parties, if competent to contract and willing to contract, were the only proper judges of the motive or consideration operating upon them; and it would be productive of the worst consequences if, under pretext, however specious, interests or dispositions subsequently arising could be made to bear upon acts deliberately performed, and which had become the foundation of important rights in others. Mere inadequacy of price or any other inequality in a bargain, we are told, is not to be understood as constituting per se a ground to avoid a bargain in equity; for courts of equity, as well as courts of law, act upon the ground that every person who is not, from his peculiar condition or circumstances, under disability, is entitled to dispose of his property in such manner and upon such terms as he chooses; and whether his bargains are wise and discreet or otherwise, or profitable or unprofitable, are considerations not for courts of justice, but for the party himself to deliberate upon. Vide Story's Equity, § 244, citing the cases of Griffiths v. Spratley, 1 Cox, 383; Copis v. Middleton, 2 Madd. 409, and various other cases.

"Again, it is ruled that inadequacy of consideration is not of itself a distinct principle of equity. The common law knows no such principle. The consideration, be it more or less, supports the contract. Common sense

knows no such principle. The value of a thing is what it will produce, and it admits of no precise standard. One man, in the disposal of his property, may sell it for less than another would. If courts of equity were to unravel all these transactions, they would throw everything into confusion, and set afloat the contracts of mankind. Such a consequence would of itself, be sufficient to show the injustice and impracticability of adopting the doctrine that mere inadequacy of consideration should form a distinct ground for relief."

In some cases where the consideration for a conveyance or contract is so grossly inadequate as to shock the conscience, it is held that cancellation will be decreed, not because the price or consideration is inadequate, but because the inadequacy is so great as to amount to evidence of fraud; fraud, and not inadequacy of consideration being even in such cases, the ground for the interposition of equity. Bruner v. Cobb, 37 Okla. 228, 131 Pac. 165, L. R. A. 1916D, 377. It does not appear from the statement of the issues in this case that cancellation was sought on the ground of fraud in the procurement of the leases, mistake, the capacity of the parties to contract, or their free consent thereto, or any other ground on which the adequacy of the consideration is material. Nor was there any finding of fact to justify a decree of cancellation on any of those grounds.

So far as consideration is concerned, under the issues in this case, the only question to be considered is whether there was any valuable consideration paid, or agreed to be paid, by the lessee to the lessors. Under the findings of the trial court, not only have the lessors failed to discharge the burden imposed on them by statute to show that there was no consideration, but from the recital of the instrument it is seen that there was a consideration, and one of value, in the eyes of the law.

In Brown v. Wilson, 58 Okla. 392, 160 Pac. 94, L. R. A. 1917B, 1184, it was not held that $1 was not a valuable or sufficient consideration, but, on the contrary, it was distinctly recognized as such. In that case the lease was for a recited consideration of $1 and the covenants and agreements of the lessee therein contained. It was for a term of 10 years and as long thereafter as oil or gas was produced. Certain stipulated royalties on the oil and gas produced were provided, and the lessee covenanted to complete a well within four months, or pay at the rate of $80 in advance for each additional three months such completion was delayed, and

also contained a surrender clause. In the majority opinion it was said that the only consideration for the lease, as a whole, was development, and with reference to the $1, it was said:

"We hold that the dollar paid Ruhl (the lessor) at the time of the execution and delivery of the lease was the sole and only consideration paid to hold the lease for the four-month term within which the lessee had to enter and complete a well, and that such consideration did not extend to uphold any other stipulation in the lease; and, further, that the agreement on the part of the lessee to pay delay money after that time was a provision made for the sole purpose of prolonging the lease."

In other words, the "contract" in that case was held to be an agreement to lease for successive quarterly terms, after an initial term of four months, and the payment of, or a binding obligation to pay, a distinct and independent consideration for each succeeding quarter was held essential. By construction, the $1 was held to support the lease for the first term of four months only; and since, as it was held, by reason of the surrender clause the lessee was not obligated to develop or pay the stipulated sum of $80 for each of the succeeding quarters, there was no consideration for the agreement to lease after the first term of four months. Had it been then thought that the $1 supported the lease for the term of ten years, instead of only the first four months thereof, it is probable that the majority of this court would have reached a different conclusion in that case on the question now under consideration. The error in that opinion, in this connection, as we now see it, was in the portion we have quoted above, that the $1 consideration supported only a four-months term, and did not extend to and uphold any other stipulation in the lease. That portion of the opinion has been overruled in effect by the recent decision of this court in Northwestern Oil & Gas Co. v. Branine, supra, in which it was said, per Hardy, J.:

"The court has no right to fractionize the contract or divide it up into sections, and say that the cash bonus supports any particular covenant to the exclusion of another, when such construction would be contrary to the clear intention of the parties as gathered from the face of their written agreement."

The form of the written agreement in the Branine Case and the one in this is the same. The only difference between the two agreements is as to the amount of the consideration, and, as before stated, that is not

material to the questions raised in this case as to the alleged invalidity of the grant for want of consideration. We cannot construe the grant here into one for six months from its date, with an option to extend the same beyond that term for successive monthly periods, without doing violence to the clear intention of the parties as expressed in unambiguous language. Their language is:

"It is agreed that this lease shall remain in force for a term of five years from this date and as long thereafter," etc.

That language can have but one meaning. Such meaning is not changed or rendered doubtful by the subsequent covenant that the lessee shall during that term complete a well within a specified time or pay for subsequent periods of delay. These subsequent covenants have no bearing on the term of the grant, except in so far as failure to comply therewith may operate an an abandonment, or cause a forfeiture thereof, if the agreement should so provide. No other construction, without doing violence to the plain meaning of the language employed, can be placed on the writing as a whole, than that the recited consideration of $1 is for the grant for the entire term of five years, and as long thereafter as either oil or gas is produced, and also the right of termination given the lessee upon compliance with the conditions thereto attached.

We therefore conclude that the grant or so-called "lease" for the full term expressed is supported by an independent valuable consideration, and is therefore not void for want of mutuality, and Brown v. Wilson, supra, holding otherwise, is on this point overruled.

With reference to the right of the lessors to terminate the lease before the expiration of the term, it will be noted that such right is not specifically reserved to the lessors, but is given to the lessee only. But it is contended that the right of the lessor to terminate arises by implication. The argument is that, notwithstanding the grant is to the lessee for a term of five years and as long thereafter as oil or gas is produced, the effect of the surrender clause is to convert the grant into one in the nature of an estate at the will of the lessee, and the statement of Coke (Co. Litt. 550) that, "when the lease is made to have and to hold at the will of the lessee, this must be also at the will of the lessor," is invoked to sustain the proposition that, since the lessee has the right to terminate, so also must the lessors. There are decisions based directly or indirectly upon the above dictum of Coke, which ap-

parently sustain the proposition. Knight v. Indiana Coal & Iron Co., 47 Ind. 105, 17 Am. Rep. 692; Cowan v. Radford Iron Co., 83 Va. 547, 3 S. E. 120; Eclipse Oil Co. v So. Penn. Oil Co., 47 W. Va. 84, 34 S. E. 923; Reese v. Zinn (C. C.) 103 Fed. 97; Federal Oil Co. v. Western Oil Co. (C. C.) 112 Fed. 373; Guffey Pet. Co. v. Oliver (Tex. Civ. App.) 79 S. W. 884. However, all courts do not accept Coke's dictum literally and without question. In Tiffany on the Modern Law of Real Property, § 54, p. 138, English and American authorities are cited to support the statement of the author that:

"If a lease or grant purport to limit an estate to hold at the will of the lessee only—that is, for so long as the lessee pleases to continue tenant—the estate created is a freehold or estate for life, determinable at the will of the lessee, and it can be conveyed only by the formalities proper in the case of freehold estates."

In his work on Landlord and Tenant, § 13, p. 102, the author states the rule:

"That a lease in terms creating an estate for years contains such an option (i. e., to terminate the tenancy at any time) in the lessee does not render the latter a tenant at will merely."

See, also, Tiffany, Landlord and Tenant, § 12f, p. 84. And in Brewster v. Lanyon Zinc Co., 72 C. C. A. 213, 140 Fed. 801, speaking of the effect of a right in the lessee to terminate, it was said:

"But that does not make the estate which it creates a mere tenancy at will within the operation of the common-law rule that an estate at the will of one party is equally at the will of the other.

"That rule is without application to a lease for a defined and permissible term, but which reserves to the lessee an option to terminate it before the expiration of the term. Archbold's Landlord & Tenant, 92; Dann v. Spurrier, 3 Bos. & Pul. 399; Doe v. Dixon, 9 East, 15."

Tiffany, in his discussion of when a tenancy at will arises (Landlord & Tenant, § 13, p. 101), after considering the question in the light of the authorities, states our understanding of the true meaning and proper application of Coke's dictum as follows:

"It has in England apparently, in accordance with these views, been decided that a conveyance to one with a right in him to terminate the holding at any time creates in him a freehold estate. There the estate thus created, in the absence of the insertion of the word 'heirs,' is a life estate merely, terminable at the will of the lessee; while under the rule prevailing in most of the

states in this country, that the word 'heirs' is not necessary for the creation of an estate in fee, the estate created would rather be one in fee terminable at the lessee's option, unless the terms of the conveyance show a different intention. There are several cases in this country which tend to support the view that such a conveyance creates an estate for life or in fee.

"Coke's dictum that such a lease, at the will of the lessee, creates a tenancy at will, is, it is conceived, to be regarded as applying only in the absence of livery of seisin, which was in his day necessary for the creation of an estate of freehold. That, if accompanied by livery of seisin, such a lease created an estate for life is clearly asserted by high authority prior to his time, and there is nothing in the decisions referred to by him to lead to a different conclusion. If, however, the instrument lacks any formality of execution, such as a seal, which may be in the particular jurisdiction necessary for the creation of freehold estate, it will, as at common law, when unaccompanied by livery of seisin, create merely an estate at will." Tif. L. &T. pp. 103, 104.

So, if it should be held that the grant here is of a freehold interest in the land, it is valid as such, having been executed with all the formalities necessary, under our statutes, for the conveyance of a freehold estate, and the instrument therefore does not create merely an estate at will. If, on the other hand, the view is taken that the grant is for a definite term, in the nature of an estate for years, the fact that it may be sooner terminated, at the option of the lessee, does not convert the grant from one in the nature of a tenancy for years into one in the nature of a tenancy at will. In either case the above rule stated by Coke is not applicable. For these reasons, we held in Northwestern Oil & Gas Co. v. Branine, supra, that the presence of the surrender clause "did not confer on the lessor the right to terminate the lease at will."

It follows that in our opinion the trial court erred in the conclusions of law, and upon the facts found the judgment below should have been for the plaintiff in error.

The judgment is accordingly reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.

All the Justices concur except TURNER and BRETT, JJ., not participating, and OWEN, J., dissenting.

OWEN, J. I am unable to concur in this case. I cannot agree that the $1 mentioned in the lease as part of the consideration is sufficient to support every covenant of the lease for the full term of five years. There was no bonus paid, and, as I construe the lease, the real consideration is the covenant to develop the premises and pay royalties. The language is:

"For and in consideration of the sum of $1.00 to them in hand paid by the said parties of the second part, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the parties of the second part to be paid, kept, and performed," etc.

Then follows in the usual form the covenants to develop the premises for oil and gas, and to pay the stipulated royalties in the event either oil or gas is found. If the lease did not contain a surrender clause, the conclusion reached by the majority of the court would be correct. The lessee would be bound by these terms, and this would be a sufficient consideration to support the grant. In the opinion it is stated:

"The lessee is obligated thereunder to do one of three things: (1) Drill and complete a well in the fixed time; or (2) surrender all his rights and pay in addition the sum of $1; or (3) pay during the term of five years, or until surrender, $15 per month for each additional month the completion of the well is delayed."

In support of the proposition that the lessee is bound to do one or the other, the cases of Cohn v. Clark, 48 Okla. 500, 150 Pac. 467, L. R. A. 1916B, 686, and McKee v. Grimm, 57 Okla. 680, 157 Pac. 308, are cited. As I understand these cases, they held the lessee was bound to pay rent until he availed himself of the surrender clause. In both cases the action was to recover rentals, there having been no drilling, and the leases had not been surrendered. In Cohn v. Clark, supra, the surrender clause was:

"Second party may at any time remove all his property and reconvey the premises hereby granted, and thereupon this instrument shall be null and void."

The lessee had failed to drill, and refused to pay the rentals, and contended that this ipso facto canceled the lease, and it was not necessary to reconvey. The court held that not having reconveyed, he was liable for the rentals due according to the terms of the lease, and that the surrender clause, for the benefit of the lessee, must be construed in connection with the forfeiture clause, for the benefit of the lessor. In the opinion, by Commissioner Mathews, appears the following discussion:

"The lessee contends that, in order to relieve himself of liability under the contract, it was unnecessary for him to avail himself of the sixth provision therein, known as the surrender clause, and execute a reconveyance as provided in this clause; but that he was not bound in the contract to begin operations on the lease, or to pay rentals, or to execute a reconveyance, but that upon failure on his part to either begin operations, or to pay the specified rentals as provided in the contract, ipso facto there was a self-executing automatic release, which relieved him of all liability. * * * If the lessee's contention be true, then we would meet the anomalous condition of a party profiting by his own breach or gaining advantage by his own wrong. Under such a contract the lessor binds his hands, and gets nothing for the lease unless the pleasure of the lessee moves him to action. Should we determine that a failure to pay the rentals stipulated, after a default in beginning operations, ipso facto operates to release the lessee from all liability, why incumber the lease with the sixth paragraph, known as the surrender clause? If failure to pay rentals nullifies the lease automatically, then there is no use of the surrender clause at all. It would be useless to insert a surrender clause in a lease requiring the lessee to go to the trouble and expense of executing an actual reconveyance, when there is a provision in the lease for his advantage which is self-executing upon his failure to pay the rentals. We must construe this contract so as to give some effect and meaning to every part of the same. We are not permitted to say that the parties hereto have deliberately inserted a clause in this contract that is useless and unnecessary, when a fair and reasonable construction will give weight and effect to it; and, following this line, we conclude that if the surrender clause has been inserted in the contract for the benefit of the lessee, and affords him an easy and expeditious way of ridding himself of the contract and its liability, the forfeiture clause in paragraph 1 must have been inserted for the benefit of the lessor only. This construction will give both of the clauses the weight and effect that was reasonably intended for them, and gives both of the parties to the contract a means of protection and a way of relieving themselves of the contract."

In McKee v. Grimm, supra, the lessee alleged that he had offered to comply with the surrender clause. The lessor, by reply, denied this allegation. The opinion holds there was a material issue of fact, with the burden of proof on the lessee, and failing to prove this affirmative defense he was liable for the rentals under the authority of Cohn v. Clark, supra.

The lease in question contains a surrender clause, giving the lessee, at any time, on the payment of $1, the right to surrender the lease after which all payments and liabilities under and by virtue of its terms shall cease and determine. The error is in holding that the lessee is bound to do one of three things, and that the $1, paid at the time of the execution of the lease, is sufficient consideration to support the option to do either, in addition to supporting the grant for the full term of five years. I do not so understand this contract. The lessee had the option, for which he had paid nothing, to surrender this lease and avoid either drilling or paying rental. Under the express language of this clause, if at any time he decided to avoid the obligations to drill or pay rental, he could do so upon paying $1, not "an additional $1," to the lessor and surrendering the lease for cancellation. This negatives the premise that $1 originally paid was intended by the parties to pay for the valuable and substantial right to surrender and avoid the expense of development.

At one of the periods mentioned in the lease, at which time the lessees, by the terms of the lease, had the option of either drilling or paying rent, or of refusing to do either, and thereby avoid liability, upon the payment of $1, the lessor refused to accept the rental tendered and brought this action to cancel the lease. No bonus had been paid and there had been no attempt at development. The covenants for development and payment of royalties being the real consideration for the lease, the contract, as I view it, was at that time unperformed on the part of the lessee. The $1 mentioned as part of the consideration was merely nominal, and the lessor would not have executed this lease for such consideration.

The courts have repeatedly held that the real and moving consideration for leases of this character is not the nominal consideration paid in advance—that is, the $1 as in this case—but the exploration and development of the land for oil and gas is the real consideration. This announcement has been made so frequently by the courts that a decision construing similar leases can scarcely be found in which such declarations are absent. In the case of Federal Oil Co. v. Western Oil Co. (C. C.) 112 Fed. 373, the lease under consideration was identical with the one here in reciting $1 and the covenants to develop as the consideration for its execution. There it was said:

"The cash payment, if actually made, was merely nominal, and it is quite apparent,

from a consideration of the terms of the whole lease, that the lessors would not have executed it for any such paltry consideration. If there was no further consideration which the lessee was bound to yield to the lessors, a court of equity would be bound to refuse the enforcement of the lease. The consideration would be so trifling, compared with the value of the leasehold interest, as to shock the moral sense. * * * Oil leases stand upon quite different grounds from leases of other immovable property. The governing principle in gas and oil leases of the character in question is that the discovery and production of gas or oil is a condition precedent to the existence and continuance of any vested estate in the demised premises. Where, as in this case the only consideration is prospective royalties to arise from exploration and development, failure to properly explore and develop the demised premises renders the agreement nudum pactum, and works a forfeiture of the lease, for it is of the essence of such a lease that the work of exploration shall be commenced and prosecuted with promptness."

Under the terms of the lease in question there was no further consideration which the lessee was bound to advance to the lessor. The lessee was not bound to drill, nor was he bound to pay rental. It is begging the question, in my opinion, to say that he was bound to surrender the lease unless he drilled or paid rental. The surrender clause is for lessee's benefit, and is his option, for which he paid nothing to avoid the covenants in the lease. That is equivalent to saying that binding himself to valid liability, unless he elected to incur that liability, is sufficient to amount to performance on his part. I agree that if the lease was a performed contract, if the lessee had paid a substantial bonus, or was bound to perform something that would be of substantial benefit to the lessor, in consideration of the five-year grant of an exclusive privilege to explore the premises, then the presence of the surrender clause would not render the contract voidable. The surrender clause does not render a performed contract voidable, but it does render an unperformed contract, without a sufficient consideration, voidable at the option of the lessor where it is voidable at the option of the lessee. A contract is performed when the consideration moving from the lessee to the lessor had been paid or performed, or when the lessee is bound by its terms to pay or perform. Other cases holding prospective royalties to be the moving consideration for execution of leases of like character are: Huggins v. Daley, 90 Fed. 606, 40 C. C. A. 12, 48 L. R. A. 320; Venture Oil Co. v. Fretts, 152 Pa. 451, 25 Atl.

732; Steelsmith v. Gartlan, 45 W. Va. 27, 29 S. E. 978, 44 L. R. A. 107; Foster v. Elk Forl Oil Co., 90 Fed. 178, 32 C. C. A. 560; Gadbury v Ohio Oil Co., 162 Ind. 9, 67 N. E. 259, 62 L. R. A. 895; Cowan v. Radford, 83 Va. 547, 3 S. E. 120; Knight v. Ind. Coal Co., 47 Ind. 110, 17 Am. Rep. 692; Witherspoon v. Staley (Tex. Civ. App.) 156 S. W. 557; Smith v. Guffey (Ill.) 202 Fed. 109, 120 C. C. A. 436; Owens v. Corsicana Pet. Co. (Tex. Civ. App.) 169 S. W. 193; Long v. Sun Co., 132 La. 691, 61 South. 684; Great West Oil Co. v. Carpenter, 43 Tex. Civ. App. 229, 95 S. W. 57; Dill v. Fraze, 169 Ind. 53, 79 N. E. 971; Ohio Oil Co. v. Detamore, 165 Ind. 243, 73 N. E. 907; Jennings-Heywood Oil Synd. v. Houssiere-Latreille Oil Co., 119 La. 793, 44 South. 501; Murray v. Barnhart, 117 La. 1023, 42 South. 492; Mansfield Gas Co. v. Alexander, 97 Ark. 167, 133 S. W. 837; Berry v. Frisbie, 120 Ky. 337, 86 S. W. 558; Bay State Pet. Co. v. Penn. Lubr Co., 121 Ky 637, 87 S. W. 1102; Flanagan v. Marsh (Ky.) 105 S. W. 424.

In holding that the $1 is sufficient to support every covenant of the lease and for the entire period of five years, it is said "the $1 is a thing of value in the eye of the law." That rule prevails in actions at law where any consideration of value is sufficient, and where the sufficiency of the consideration will not be inquired into. This is not such an action. This is an action of purely equitable cognizance, and a court of equity will look to the reasonableness of the moving consideration. That was held in the case of Federal Oil Co. v. Great Western Oil Co., supra, where it was said:

"Except to the extent of $1, the lessee has yielded no consideration for the lease; nor is it bound by any enforceable promise or covenant, for the breach of which the lessors would have a right of action to compel the payment or yielding of any further consideration whatever. * * * The complainant is under no obligation to pay the monthly rental. * * * The lessors could maintain no action to recover the same if the complainant should refuse to continue payment. Such a lease is without consideration, and must be held nudum pactum and void. A lease so unfair, inequitable, and against good conscience no court ought to enforce."

Other cases to like effect are: Long v. Sun Co., supra; Huggins v. Daley, supra; Berry v. Frisbie, supra; Jennings-Heywood Oil Synd. v. Houssiere-Latreille Oil Co., supra; Smith v. Guffey, supra; Murray v. Barnhart, supra; Owens v. Corsicana Pet. Co., supra.

It is suggested that the $1 in many instances has been held to support a conveyance of land by warranty deed, and the case of Ehrig v. Adams, 67 Okla. 157, 169 Pac. 645, is cited as authority on this proposition. That was not the question before the court in that case. In that case a restricted Indian had by warranty deed, and for a sufficient consideration, attempted to convey certain land. By reason of the restrictions on alienation that deed was void. Later, and after the restrictions had been removed by operation of law, the same Indian conveyed the same premises to the same grantee, under a deed reciting a consideration of $1. It was contended that the principal consideration for this last deed was, in fact, the consideration received under the first deed, and, the first deed being void, therefore the last deed, based on the same consideration, was void. It was said:

"There is no merit in the contention that the deed of July, 1910, was void for the reason that it was supported principally by the consideration received under the deed of 1907. There is no allegation of fraud or want of consideration. The second deed stands as an independent transaction. The allottee being of less than one-half blood, all restrictions upon his powers of alienation of this land were removed by the act of May 27, 1908. When he saw fit to convey this land to Bratton in 1910 for $1, he was at liberty to do so, without regard to his void deed made prior to this act. The fact that the Indian appears to have been sufficiently honest to recognize and remember the consideration which he had received under the void deed did not impose any restrictions upon his power to alienate."

The sufficiency of the consideration was not in question. The question was whether receiving consideration under a void deed rendered the later deed void. In the instant case the question necessary for determination is whether the lessor had received a sufficient consideration to distinguish this case from the rule that contracts unperformed, without sufficient consideration, which are optional as to one are optional as to both. It is not contended that the lessee was bound to render a sufficient consideration in the future by developing the premises or paying rentals. He was not bound to do either.

This action to cancel the lease being of purely equitable cognizance, a court of equity must inquire into the sufficiency of the consideration, and must say, as I view the lease, the covenants to develop and pay royalties were the moving consideration from the lessee to the lessor, and the lessee was not bound to perform these. That being true, and there being no development, this case falls squarely within the rule announced in Hill Oil & Gas Co. v. White, 53 Okla. 748, 157 Pac. 710, where it was said, Mr. Justice Hardy speaking for the court:

"The rule in this state is that contracts unperformed, without sufficient consideration, which are optional as to one are optional as to both."

The contract here was unperformed, because no sufficient consideration had been paid, neither was the lessee bound to do anything that would amount to sufficient consideration.

Other cases in which this rule was announced are: Frank Oil Co. v. Belleview, 29 Okla. 719, 119 Pac. 260, 43 L. R. A. (N. S.) 487; Superior Oil Co. v. Mehlin, 25 Okla. 809, 108 Pac. 545, 138 Am. St. Rep. 942; Kolachny v. Galbreath, 26 Okla. 772, 110 Pac. 902, 38 L. R. A. (N. S.) 451; Brown v. Wilson, 58 Okla. 392, 160 Pac. 94, L. R. A. 1917B, 1184.

Assuming that the $1 mentioned as a part of the consideration was in fact paid, this payment was, in my opinion, wholly inadequate to support the exclusive right to enter and explore for five years, and the lower court did not err in giving the lessor the right to terminate the contract, which was without sufficient consideration, unperformed and optional as to the lessee, and therefore optional as to the lessor.

It is a universal rule that courts will not grant specific performance at the instance of one of the parties to an unperformed contract who himself is not bound to perform the contract. There is an unbroken line of decisions of this court following that rule. To deny the lessor the right to go into court and by proper action cancel such a contract is to deny him a remedy in the courts of which he might avail himself by force of arms.