IDA I. MCKINNEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 45823. Promulgated April 18, 1935.

*Walter J. Carrico, Esq.*, and *James R. Bansley, C. P. A.*, for the petitioner.

*James K. Polk, Jr., Esq.*, for the respondent.

**452**

TURNER: The first issue is disposed of by the last paragraph in our findings of fact, and a recomputation of tax, in so far as this issue is concerned, can be made under Rule 50.

The second issue presents a more difficult question. In 1927 the Johneda Oil Co. made a distribution to the petitioner, its sole stockholder, in the sum of $165,519.20. She included $78,400 of this amount in her return. Whether it was returned as dividends subject to surtax only, or as ordinary gain subject to both surtax and normal tax, is not shown. The respondent, in his determination, treated $140,449.35 as dividends and the remaining $25,069.85 as having been paid from capital. The error assigned is that the re-

spondent failed to determine that of the total distribution the sum of $145,968.55 represented a distribution out of capital and is not taxable as dividends in the hands of the petitioner. That the remaining $19,550.65 should be taxed as dividends is not disputed.

The parties have agreed that the transfer by the petitioner of the oil and gas leases to the Johneda Oil Co. for all of its capital stock was a nontaxable transaction under section 203 (b) (4) of the Revenue Act of 1924,[1] and that the stock in her hands had a basis of $63,766.35. It is also agreed that under section 204 (a) (8) of the Revenue Act of 1926,[2] the basis of the oil and gas leases, for the purpose of determining gain or loss to the corporation from the sale or other disposition of said leases, is $57,570.99, of which amount $28,776.38 is attributable to the lease on sections 22 and 23, Osage County.

The petitioner rests her case on the contention that, since the lease on sections 22 and 23, Osage County, had a fair market value of $247,500 on the date paid in for stock, such value represented the cost of the lease to the corporation and thereby constituted a part of the capital of the corporation, and, further, that allowances for the depletion and depreciation of such value, or capital, must be made in determining earnings and profits distributable as dividends, even though a different basis is required in computing the depreciation and depletion deductions to be used in determining the taxable net income of the corporation.

It is argued on behalf of the respondent that since $57,570.99 is to be used by the corporation as the basis for determining gain or loss from the sale or other disposition of the oil leases paid in for its stock, it is the basis for all purposes, including the computation of earnings and profits subject to distribution as dividends. Accordingly he has given no recognition, in his computation of the amount distributable by the Johneda Oil Co. as dividends, to the fact that the lease on sections 22 and 23, Osage County, had a fair market value of $247,500 on the date paid in for stock.

[1] SEC. 203. (b) (4) No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

[2] SEC. 204. (a) (8) If the property (other than stock or securities in a corporation a party to a reorganization) was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in paragraph (4) of subdivision (b) of section 203 (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money in addition to such stock or securities), then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

454

The pertinent provisions of the statute are to be found in section 201 of the Revenue Act of 1926,[3] under the heading "Distributions by Corporations." The obvious purpose of this section is to provide for the taxation to corporate stockholders of all gains derived by them as distributions based on their stockholdings and to provide a complete plan whereby such gains, if not taxable as dividends, may be subjected to tax as ordinary gains. It is to be noted that subsection (a) defines the term "dividend" as "any distribution made by a corporation to its shareholders * * * out of its earnings or profits", while subsection (b) provides that "every distribution is made out of earnings or profits to the extent thereof." Provision is then made in subsection (c) for the treatment of distributions in partial or complete liquidation, and, following that, subsection (d) prescribes the manner and extent to which distributions not in partial or complete liquidation, nor out of earnings or profits, are to be reported as income. A distribution falling within subdivision (d) must first be applied against the basis of the stock in the hands of the stockholders and the excess, if any, is taxable not as dividends but in the same manner as gain from the sale or exchange of property. It is on this provision of the statute and on the regulations thereunder that the petitioner relies.

While the statute, by section 201, *supra*, limits the use of the term "dividend" to distributions made out of "earnings or profits", it does not define or amplify the meaning of the term "earnings or profits." It is apparent, however, that since section 201 does make full and complete provision for the taxation to stockholders, either as dividends or as ordinary income, of all gains received by them as the result of corporate distributions, there is no occasion to place a strained and unnatural construction on the meaning of the term "earnings or profits" of a corporation as used in that section. The petitioner claims that the logical and natural construction to be placed on that term in applying it to the distributions here involved is already contained in article 1546 of Regulations 69. If this article does cover the distributions in question and places a reason-

---

[3] Sec. 201. (a) The term "dividend" when used in this title (except in paragraph (9) of subdivision (a) of section 234 and paragraph (4) of subdivision (a) of section 245) means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

(b) For the purposes of this Act every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. * * *

*     *     *     *     *     *     *

(d) If any distribution (not in partial or complete liquidation) made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not out of earnings or profits, then the amount of such distribution shall be applied against and reduce the basis of the stock provided in section 204, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property. The provisions of this paragraph shall also apply to distributions from depletion reserves based on the discovery value of mines.

*.     *     *     *     *     *     *

able interpretation on the statute, the regulation is controlling and disposes of the case.

The article in question reads as follows:

ART. 1546. *Distributions from depletion or depreciation reserves.*—A reserve set up out of gross income by a corporation and maintained for the purpose of making good any loss of capital assets on account of depletion or depreciation is not a part of surplus out of which ordinary dividends may be paid. A distribution made from a depletion or a depreciation reserve based upon the cost of the property will not be considered as having been paid out of earnings or profits, but the amount thereof shall be applied against and reduce the cost or other basis of the stock upon which declared for the purpose of determining the gain or loss from the subsequent sale of the stock. If such a distribution is in excess of the basis, the excess shall be taxed as a gain from the sale or other disposition of the property. A distribution made from a depletion reserve based on the discovery value of a mine shall be similarly treated (by virtue of section 201 (d)), but a distribution from any other depletion reserve based upon discovery value, to the extent that such reserve represents the excess of the discovery value over cost or March 1, 1913, value, is, when received by the shareholders, taxable as an ordinary dividend. In the case of oil and gas wells the amount by which a corporation's depletion allowance for any taxable year based upon the income from the property (see section 204 (c) (2) and article 221) exceeds a depletion allowance based on cost or value, constitutes a part of the corporation's "earnings or profits accumulated after February 28, 1913," within the meaning of section 201, and, upon distribution to shareholders, is taxable to them as a dividend. A distribution made from that portion of a depletion reserve based upon a valuation as of March 1, 1913, which is in excess of the depletion reserve based upon cost, will not be considered as having been paid out of earnings or profits, but the amount of the distribution shall be applied against and reduce the cost or other basis of the stock upon which declared for the purpose of determining the gain or loss from the subsequent sale of the stock. No distribution, however, can be made from such a reserve until all the earnings or profits of the corporation have first been distributed.

In the above article it is stated that a " distribution made from a depletion or a depreciation reserve *based upon the cost* of the property will not be considered as having been paid out of earnings or profits, but the amount thereof shall be applied against and reduce *the cost or other basis of the stock on which declared.*" Obviously the " cost " of property referred to is the cost to the corporation, and it is to be noted that the regulation specifies depletion reserves based on " cost " and not on " cost or other basis." This is particularly noticeable since in the same sentence it is provided that such distributions in the hands of the stockholders are to be applied against and reduce the " cost or other basis of the stock " upon which declared. If it had been intended by this regulation to treat all distributions made out of depletion reserve as being made out of earnings and profits, except those made out of depletion reserves used in determining taxable net income, it would have been a very simple matter to have inserted the words " or other

basis " after the word " cost " as has been done later in the same sentence. As the article reads, however, it conveys to us a deliberate intention to construe the statute as meaning that " earnings or profits " distributable as dividends under the circumstances before us are to be computed on the basis of cost to the corporation of the property being depleted, and, in our opinion, such a construction of the statute is not only reasonable and proper, but is a logical as well as correct construction.

It is well settled that the cost to a corporation of the property acquired through the issuance of its capital stock is the fair market value of such capital stock on the date issued, and where all of the capital stock of a corporation is issued for property and there is no other method of measuring the fair market value of the stock so issued, such fair market value on that date may properly be determined to be the equivalent of the fair market value of the property received. *Reliance Investment Co.*, 22 B. T. A. 1287; *Mead Realty Co.*, 21 B. T. A. 1062; *L. H. Philo Corporation*, 16 B. T. A. 130; *John Glackner Realty Corporation*, 11 B. T. A. 151; *Realty Sales Co.*, 10 B. T. A. 1217.

It has been stipulated that the fair market value of the lease on sections 22 and 23, Osage County, the property forming the basis for the controversy herein, was $247,500 on the date acquired by the Johneda Oil Co. for its stock, and, under the decisions cited, this value was the cost of the property to the corporation. Accordingly, a distribution made out of a depletion reserve based on such cost is not a dividend, but, under article 1546, *supra*, must first be applied against the basis of petitioner's stock and, under subsection (d), *supra*, any excess is taxable as ordinary gain.

The respondent, in his brief, argues that article 1546 is not susceptible of the above construction, but that if it should be so held, it is contrary to the " clear, explicit, and unambiguous provisions of the Revenue Act as enacted by Congress." The brief is in itself vague and ambiguous as to the manner in which the regulation is declared to be contrary to the statute. The substance of the argument seems to be that the statute requires that " earnings or profits " of a corporation, as the term is used in section 201, *supra*, must be determined in the same manner and on the same basis as its taxable income. That the statute does not so provide is, in our opinion, well settled. See our discussion in *Charles F. Ayer*, 12 B. T. A. 284. Furthermore the respondent himself in computing the tax in this case has necessarily recognized a distinction between taxable net income and " earnings or profits." Under section 204 (c) (2) of the Revenue Act of 1926 the depletion deduction allowable to the Johneda Oil Co., in computing its taxable net income for the years 1925, 1926, and 1927, is a percentage of the gross income from the property

depleted, while the respondent has stipulated that he computed "earnings or profits" on an entirely different basis, namely, the basis which would have been applicable in determining gain or loss from a sale or other disposition of the leases. Section 201 (d) on its face distinguishes between "earnings or profits", as used in subsection (a), and taxable net income by providing in its last sentence that distributions from depletion reserves based on the discovery value of mines should not be treated as having been paid out of "earnings or profits", while in section 204 (c) (1) it is provided that the depletion deduction for determining net income shall be based on such discovery value.

That the application of article 1546 contended for by the petitioner does not do violence to the intent and meaning of the statute so as to make it invalid seems to be definitely conceded by a conclusion contained in the respondent's brief, wherein it is stated that the construction asked for "would avail the petitioner nothing in view of the explicit requirement that any distribution in excess of the basis of the transferor is taxable to the distributee." That statement and a further conclusion contained in the brief would seem to indicate that under the respondent's theory of the case the result would be the same whether the distribution is out of "earnings or profits" or is an admitted distribution out of capital. After reviewing various provisions of the Revenue Acts of 1924 and 1926, the brief states:

It seems clear that the "gain or loss" spoken of in Section 204 (a), supra, which must be determined on the same basis as it would be in the hands of the transferor (Section 204 (a) (8), supra) is a generic term and the word "gain" includes "earnings or profits" provided for in Section 201 (a), supra, which are taxable to the distributee if in excess of the basis of the transferor (Section 201 (d), supra).

We do not, of course, subscribe to the suggestion contained in the statement quoted, that the statute provides that dividends as defined in section 201 (a), *supra*, are taxable to the stockholder only if in excess of the basis for the stock, and even the petitioner has not gone that far. We merely recite the discussion contained in the respondent's brief to show that nothing of substance has been offered to maintain the assertion that the provisions of article 1546 covering the question here involved give an unreasonable construction to the statute so as to justify a repudiation of the regulation, and we have already pointed out that, in our opinion, the regulation is reasonable and is a proper construction of the statute.

It is suggested that *Commissioner* v. *Sansome*, 60 Fed. (2d) 931, is most nearly in point and supports the respondent's position here. The facts are so dissimilar that a detailed distinction of that case from the instant case seems unnecessary. In view of the fact, however, that the rule there laid down has been followed by us in a number of cases, *Helen V. Crocker*, 29 B. T. A. 773; *George F.*

*Baker, Jr., Executor,* 28 B. T. A. 704; and *W. Gibson Carey, Jr.,* 30 B. T. A. 572, it seems advisable to point out a few of the distinctions. The case here does not involve the reorganization of a corporation, as did the *Sansome* case, but deals with the organization of a corporation where no corporation existed before. In the *Sansome* case the only change effected was a mechanical change. The successor corporation did not carry on a business of any kind and the rights of stockholders and creditors were in reality the same as before. While in this case we have a business actually conducted and carried on. The oil and gas leases were exploited and the oil reserves converted into the money which was distributed by the corporation to its stockholder. In the *Sansome* case the court said in substance that since by statute the corporate reorganization should not result in the realization of gain or loss, it was extremely unlikely that the transaction should be recognized as breaking "the continuity of the corporate life" so as to change accumulated profits into capital. If, by reason of the fact that the transfer of the oil leases in this case for the stock of the Johneda Oil Co. was a nontaxable exchange under the statute, we should ignore the corporate entity and determine the petitioner's profits as if the corporation did not exist, we would find a situation far different from that in the *Sansome* case. The petitioner would still be required to report her gains as ordinary gains and not as dividends. She would further be permitted to deduct from gross income a depletion allowance based upon a percentage of the income from the property and would very likely have a much smaller taxable net income than under our holding that the distributions here in question fall within the provisions of section 201 (d), *supra.* We see no justification in the law or the facts for applying here the rule laid down in the *Sansome* case.

It is not apparent from the record whether we have before us sufficient facts for computing the correct amount of the deficiency under Rule 50. Neither party has given us any statement of the financial condition of the Johneda Oil Co. at the time the distributions were made, and, so far as the record is concerned, the leases other than that on sections 22 and 23, Osage County, might have yielded sufficient earnings or profits to pay a dividend in the full amount of the distribution made by the corporation during the taxable year. Neither do we know whether the petitioner's stock basis has previously been reduced by similar distributions made in prior years. The respondent has not suggested or argued these points, however, and we have considered and decided that question as it was presented.

Reviewed by the Board.

*Decision will be entered under Rule 50.*