**COMMISSIONER OF INTERNAL REVE-
NUE v. McKINNEY.**

· No. 1415.

Circuit Court of Appeals, Tenth Circuit.

Jan. 14, 1937.

· Maurice J. Mahoney, Sp. Asst. to the Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., and Sewall Key and Ellis N. Slack, Sp. Assts. to the Atty. Gen., on the brief), for petitioner.

Walter J. Carrico, of Tulsa, Okl., for respondent.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals redetermining the tax liability of respondent for the year 1927.

On May 23, 1924, respondent received possession of certain oil and gas leases under a decree of distribution, as residuary legatee of the estate of John E. McKinney, who died on November 13, 1922.

On May 23, 1924, respondent transferred such leases to Johneda Oil Company in exchange for all of its capital stock.

812

The fair market value of the leases on November 13, 1922, adjusted by adding thereto the capital additions and deducting therefrom the depletion allowances during the period from November 13, 1922, to May 23, 1924, was:

| | |
|---|---|
| Okesa | $ 712.21 |
| Preston | 3,414.60 |
| Shepherd | 930.59 |
| Osage Foster | 4,560.72 |
| Collier | 276.04 |
| Buchanan | 2,759.68 |
| Elgin | 11,714.28 |
| Section 5, Osage Co. | 4,426.49 |
| Sections 22 and 23, Osage Co. | 28,776.38 |
| Total | $57,570.99 |

However, subsequently to the death of John E. McKinney and prior to the transfer of such leases, oil was discovered on the lease in Sections 22 and 23, Osage County. The fair market value of that lease on the date of the transfer was $247,500.00. The fair market value of the other leases on the date of the transfer was as above stated.

On May 23, 1924, the amount of oil reasonably expected to be recovered from the lease in Sections 22 and 23 was 300,344 barrels; and the production from such lease for the years 1924 to 1927 inclusive, was 83,232.77, 74,817.56, 30,828.22 and 15,472.51 barrels respectively.

At the time of the transfer of such leases to the corporation respondent paid to the corporation in cash $6,195.36. That amount plus the values of the leases, or an aggregate of $63,766.35, was the cost to respondent of the stock in the corporation.

In 1927, respondent received a distribution from the corporation of $165,519.20 of which amount $78,400.00 was included in her original income tax return for that year. The Commissioner determined that of the sum so distributed, $140,449.35 constituted dividends, and was taxable as such, and that the remainder, or $25,069.85, constituted a partial distribution of the capital of the corporation. In determining the amount of dividends, the Commissioner took as the basis for computing the depletion and depreciation reserve of the lease in Sections 22 and 23, the sum of $28,776.38. He gave no consideration to the fact that such lease on the date of its acquisition by the corporation had a fair market value of $247,500.00 and held that the aggregate value of $57,570.99 was the proper depletion and depreciation reserve for the purpose of computing earnings and profits distributed as dividends.

The Board held that in determining the depletion and depreciation reserve, the lease in Sections 22 and 23 should be valued at $247,500.00, and such reserve increased accordingly and computed the amount of dividends in such distribution to respondent, on that basis. It expunged the deficiency and found an overpayment of $14,766.83. See 32 B.T.A. 450.

The Commissioner has petitioned for review.

The question here presented is what part of the distribution should be considered as distribution of corporate earnings and profits and taxed to respondent as a dividend as defined in section 201 (a) of the Revenue Act of 1926 (44 Stat. 10), and what should be considered as a distribution of capital within the purview of section 201 (d) of the Revenue Act of 1926.

Under the provisions of section 203 of the Revenue Act of 1926 (44 Stat. 12) no gain or loss resulted to respondent when she exchanged the leases for all the stock in the corporation on May 23, 1924.[1] See, also, Darby-Lynde Co. v. Commissioner of Internal Revenue (C.C.A.10) 51 F.(2d) 32. By the enactment of section 203 (b) (4), Congress recognized that, notwithstanding in such transactions there is an exchange of property for stock, there is, in substance, no real gain or loss. It, therefore, excluded such a transaction from income taxation.

Under the Revenue Act of 1926 (44 Stat. 14) the basis for determining the gain or loss from the sale or other disposition of

[1] Section 203 of the Revenue Act of 1926, in part reads:

"Sec. 203. (a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202, shall be recognized, except as hereinafter provided in this section.

"(b) * * *

"(4) No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange."

property acquired after February 28, 1913, if the property was "acquired by bequest, devise, or inheritance" is "the fair market value of such property at the time of such acquisition." [2]

At common law, real property devised by will, passes to the devisees as of the date of the death of the testator. "The decree of distribution necessarily is later than, and has no definite relation to, the time when the real estate passes." Brewster v. Gage, 280 U.S. 327, 334, 50 S.Ct. 115, 117, 74 L.Ed. 457. The rule has not been changed by statute in Oklahoma, where the leases in question are located. In Oklahoma an oil and gas lease is an incorporeal hereditament or a profit à prendre. It is an interest in real property. Rich v. Doneghey, 71 Okl. 204, 177 P. 86, 89, 3 A.L.R. 352. It follows that respondent acquired the leases as of the date of the death of John E. McKinney.

Under the Revenue Act of 1926 (44 Stat. 14, 15) the basis for determining gain or loss from the sale or other disposition of property acquired after December 31, 1920, by a corporation in exchange for its stock in connection with a transaction described in section 203 (b) (4), Revenue Act of 1926, is the same as it would be in the hands of the transferor.[3]

Section 204 (c), of the Revenue Act of 1926 (44 Stat. 14, 16), provides that the basis upon which depletion and depreciation are to be allowed shall be the same as the basis for determining gain or loss from the sale or other disposition of the property.

It follows that the basis for determining gain or loss, in the event of a disposition of the leases by the corporation, would be the cost of such leases to the respondent, their fair market value at the date of their acquisition by her and not their fair market value at the date of their acquisition by the corporation. The cost to respondent is likewise the basis for determining depletion and depreciation allowances to the corporation. Furthermore, if the corporation disposed of such leases and liquidated and distributed its assets to respondent, she would realize as a profit, the difference between the amount received and the cost of such leases to her. Of course any part of such distribution that represented earnings of the corporation from operations would be excluded since they would be classified and taxed as dividends.

With these preliminary considerations disposed of, we turn now to the statute upon the construction of which, the solution of our problem primarily depends.

The applicable statute is section 201 of the Revenue Act of 1926 (44 Stat. 10).

Subdivision (a) thereof provides that the term dividends shall mean any distribution made by the corporation to its shareholders out of earnings and profits accumulated since February 28, 1913.

Subdivision (b) thereof provides that every distribution is made out of earnings and profits to the extent thereof and from those most recently accumulated. Subdivision (c) thereof relates to partial or complete liquidation.

Subdivision (d) provides as follows:

"(d) If any distribution (not in partial or complete liquidation) made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not out of earnings

---

[2] Section 204 (a) of the Revenue Act of 1926, in part reads:

"Sec. 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—* * *

"(5) If the property was acquired by bequest, devise, or inheritance, the basis shall be the fair market value of such property at the time of such acquisition. The provisions of this paragraph shall apply to the acquisition of such property interests as are specified in subdivision (c) or (e) of section 402 of the Revenue Act of 1921, or in subdivision (c) or (f) of section 302 of the Revenue Act of 1924, or in subdivision (c) or (f) of section 302 of this Act."

[3] Sec. 204 (a) (8) of the Revenue Act of 1926 reads:

"(8) If the property (other than stock or securities in a corporation a party to a reorganization) was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in paragraph (4) of subdivision (b) of section 203 (including also, cases where part of the consideration for the transfer of such property to the corporation was property or money in addition to such stock or securities), then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made."

or profits, then the amount of such distribution shall be applied against and reduce the basis of the stock provided in section 204, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property. The provisions of this paragraph shall also apply to distributions from depletion reserves based on the discovery value of mines."

The funds distributed by the corporation were realized in part from the sale of capital assets, oil from the leases. The difference between the amount received therefor, and the cost of the leases to the corporation, viz. their fair market value on the date the corporation acquired them less allowances for depletion and depreciation, was in fact a capital gain. To respondent it was a delayed capital gain because no gain was realized when she transferred the leases to the corporation. Only the remainder of the distribution was realized from true corporate earnings.

We are of the opinion Congress employed the phrase "earnings or profits" in section 201 (a), supra, in its ordinary sense; that it did not intend the phrase to embrace distributions made out of a depletion and depreciation reserves based on cost to the corporation, but intended that distributions from such reserves, which represent delayed capital gains to a shareholder, should be taxed under the provisions of section 201 (d). This construction produces a reasonable and just result when applied in the instant case. The exchange of the leases for stock in the corporation resulted in no gain or loss to respondent. Under section 201 (d), supra, the distribution to respondent here involved, to the extent it is not out of earnings or profits of the corporation, must be applied against and to reduce the cost basis of the stock to respondent; and part of such distribution not out of earnings or profits, to the extent it exceeds such basis, is taxable to respondent as a gain from the sale or exchange of property. If respondent should sell any part of the stock so acquired she would realize a taxable capital gain in the amount of the difference between the cost of such stock to her less any deductions on account of distributions not out of earnings or profits provided for in section 201 (d) of the Revenue Act of 1926, and the price received; and if the corporation should be dissolved and its assets distributed, respondent would realize a taxable gain on the stock retained by her in the amount of the

difference between the cost of the stock to her and the amount distributed to her, less any part of the distribution realized from corporate earnings. Hence respondent will pay a tax on her delayed capital gain if and when she realizes it and the corporation in the meantime will pay income tax on the profits from the oil produced with depletion and depreciation allowances limited to the cost of the leases to respondent.

Furthermore, such construction conforms to Article 1546 of Treasury Regulation 69, the applicable regulation which reads in part as follows:

"Art. 1546. *Distributions from depletion or depreciation reserves.*—A reserve set up out of gross income by a corporation and maintained for the purpose of making good any loss of capital assets on account of depletion or depreciation is not a part of surplus out of which ordinary dividends may be paid. A distribution made from a depletion or a depreciation reserve based upon the cost of the property will not be considered as having been paid out of earnings or profits, but the amount thereof shall be applied against and reduce the cost or other basis of the stock upon which declared for the purpose of determining the gain or loss from the subsequent sale of the stock. If such a distribution is in excess of the basis, the excess shall be taxed as a gain from the sale or other disposition of property. * * *"

The regulation first provides that a reserve created from gross income of a corporation and maintained for the purpose of making good any loss of capital assets on account of depletion or depreciation is not surplus out of which ordinary dividends may be paid. It then provides that a distribution which is made from a depletion or depreciation reserve based upon the cost of the property will not be considered as having been paid out of earnings or profits, but the amount thereof shall be applied against and reduce the cost or other basis of the stock for the purpose of determining the gain or loss from the subsequent sale of such stock. The word cost appears twice in a single sentence in the regulation. The first time it is used in connection with the corporation and the second in connection with the shareholder. In the former it is provided that a distribution made from a depletion or depreciation reserve based upon the cost of the property shall not constitute payment from earnings and profits. The corporation sets up the

reserve and makes the distribution. The position of the word in the context indicates that it has reference to the cost to the corporation, not its transferor. The second time the word appears is in connection with the shares in the hands of the distributee. It is provided that such a distribution shall be applied against and reduce the cost or other basis of the stock. The absence of the words "or other basis" following the word cost when used in connection with the corporation and their presence when used in connection with the shareholder, all appearing in the single sentence cannot be regarded as a casual difference with no intended significance. It indicates a deliberate purpose to construe the statute to mean that in the circumstances presented here, earnings or profits which are distributable as dividends shall be computed on the basis of cost of the property to the corporation.

That portion of the regulation here material has been continued in force without substantial change since 1926. Congress re-enacted section 201 (a) and (d), supra, in the Revenue Act of 1932, without material change other than the omission of the last sentence in section 201 (d). 47 Stat. 203, § 115(a, d), 26 U.S.C.A. § 115 and note. This is persuasive evidence that Congress approved the regulation and the administrative construction manifested therein. Brewster v. Gage, 280 U.S. 327, 337, 50 S.Ct. 115, 74 L.Ed. 457; Ramsey v. Commissioner (C.C.A.10) 66 F.(2d) 316, 318; Morrissey v. Commissioner, 296 U.S. 344, 355, 56 S.Ct. 289, 80 L.Ed. 263; Hartley v. Commissioner, 295 U.S. 216, 220, 55 S.Ct. 756, 79 L.Ed. 1399.

The case of Commissioner v. Sansome (C.C.A.2) 60 F.(2d) 931, is not to the contrary. There the taxpayer bought certain stock in a corporation on January 1, 1921. On April 1, 1921, the corporation sold all of its assets to a new corporation. The new corporation assumed all liabilities of the old and issued its shares to the shareholders of the old in the same proportion, although the number of shares was increased five times and they were without par value. The old corporation had earned a large surplus and undivided profits prior to January 1, 1921. They were carried as such in a stated amount on the books of the old corporation up to April 1, 1921. The new corporation carried them as such and in the same amount as the old corporation during 1921, but reduced them in 1922 because of losses sustained in that year. The new corporation was dissolved in 1923 without having made any profit. The taxpayer received payments during that year as liquidating dividends. The court held that the transaction between the two corporations was one of reorganization in which the shareholders were not subject to tax as gain or loss; that there was such corporate identity that the earnings of the old corporation continued to be such in the hands of the new and that when they were distributed by it they were taxable as dividends in the hands of the shareholders. Here no reorganization was involved. A new corporation was formed. It took the property and operated it. The payment made to the taxpayer was in part from a depletion and depreciation reserve within the purview of section 201 (d) and the regulation, supra, and in part from earnings of the corporation.

The Commissioner urges that such construction results in property in the hands of a corporation having two different bases —one for the determination of gain or loss and depletion and depreciation in computing income tax of the corporation and another for determining depletion and depreciation reserve for the purpose of arriving at the character of distributions made to shareholders. That must of necessity be true since under the provisions of section 203 (b) (4) and section 201 (d), supra, the distribution results in a delayed capital gain to the shareholder.

The construction adopted by the Board is fair and equitable. It gives to the words earnings and profits their ordinary meaning. It results in true capital gain being taxed as such and true earnings being taxed as dividends. On the other hand the construction adopted by the Commissioner is not practicable. Suppose for example, prior to the distribution, the respondent had sold a portion of her stock for its actual value. Surely a distribution to respondent's purchaser, of the depletion and depreciation reserve, computed on the value of the leases at the date of their acquisition by the corporation, could not be regarded as a distribution of earnings. The purchaser would simply be getting back a portion of his capital investment. Either an injustice would have to be done the purchaser or the distribution treated as a dividend from earnings as to one stockholder and a distribution of capital as to another. This demonstrates that distributions by a corporation for the purposes of taxation should be characterized by their

source, not by the status of the stockholder to whom they are paid.

The cost of the leases to the corporation was the value of the stock less the cash paid in by respondent. The value of the stock is measured by the value of the leases received in exchange for the stock at the time of the transfer, or $276,304.61 plus the cash paid in by respondent. A distribution made from a reserve based on that cost is not a dividend from profits or earnings of the corporation. It is a distribution from a depletion and depreciation reserve based upon cost to the corporation and should be applied against and reduce the basis of the stock for the purpose of determining gain or loss to the stockholder. That, we think, is the plain intent of the statute and the regulation.

Affirmed.