### DR. G. H. TICHENOR ANTISEPTIC CO. v. UNITED STATES.

#### Civ. A. No. 1332.

District Court, E. D. Louisiana, New Orleans Division.

March 22, 1948.

290

John J. Finnorn, of New Orleans, La., for plaintiff.

Sewall Key, Acting Asst. Atty. Gen., Andrew D. Sharpe, and Robert R. Reynolds, Jr., Sp. Assts. to Atty. Gen., and Robert Weinstein, U. S. Atty., of New Orleans, La., for defendant.

BORAH, District Judge.

This suit by plaintiff taxpayer was brought against the United States of America under and pursuant to the provisions of Title 28 U.S.C.A. § 41(20) to recover the sum of $548.25 alleged to have been overpaid as excess profits tax for the calendar year 1940.

The action is based on the ground that the Commissioner of Internal Revenue in determining the taxpayer's excess profits tax for the year 1940 under the invested capital method, pursuant to Section 718 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code. § 718, erred in valuing at $90,000 a certain contract under which the taxpayer manufactured a medicinal compound instead of allowing a value of at least $284,375.

The facts are found to be as follows:
Findings of Fact

1. Dr. George H. Tichenor, a resident of the City of New Orleans, was the originator and patentee of a medical compound known as "Dr. G. H. Tichenor's Antiseptic Refrigerant", registered in the United States Patent Office in the year 1882, and registry renewed from time to time.

2. On May 9, 1893, Dr. Tichenor, by written contract conveyed to J. M. Sherousse and Mrs. A. L. Baldwin the exclusive right of sale and the sole control and management of the compound together with such of his personal services as might be necessary in the supervision and manufacture of the refrigerant for a period of sixteen years from May 1, 1893. Under the agreement Dr. Tichenor was to receive for his services $4,000 per annum and a royalty of 2% of the gross sales in excess of $50,000 annually. On August 14, 1895, the expiration date of the contract was extended from May 1, 1909 to May 1, 1916.

3. On June 29, 1905, A. D. Parker and W. R. Irby, both residents of the City of New Orleans, purchased the unexpired term of ten years and ten months of the aforesaid contract from Sherousse and Mrs. Baldwin for the sum of $50,000 and the assumption of all the obligations of the aforesaid contract.

4. On the same day, to-wit, June 29, 1905, Parker and Irby secured from Dr. G. H. Tichenor an extension of their aforesaid contract rights to July 1, 1935. In consideration they agreed to pay Dr. Tichenor $5,000 per annum for his services in supervising the manufacture of the compound and in addition to pay him from July 1, 1916, a royalty of 2% of the gross sales in excess of $50,000.

5. On June 30, 1905, pursuant to the agreement of June 15, 1905, the taxpayer corporation was formed by Parker and Irby who subscribed to 27 of the original 30 shares.

6. By a contract dated July 8, 1905, Parker and Irby transferred to the taxpayer corporation all their contract rights in and to the contracts which they had acquired from Sherousse, Mrs. Baldwin and Dr. Tichenor, as aforesaid, for $500,000, represented by $3,000 in cash and 4970 shares of par value $100.00 each, of the corporation's capital stock.

7. Prior to January 22, 1929, and in accordance with the terms of the contract of June 29, 1905, Dr. Tichenor transferred all his right to trade-marks and formulas, and any rights whatsoever

pertaining to the refrigerant to The Dr. G. H. Tichenor Company, Ltd., a corporation organized by him.

8. By contract dated January 22, 1909, the taxpayer corporation secured from The Dr. G. H. Tichenor Company, Ltd., to which Dr. Tichenor had transferred his formula and patent rights, an extension of its aforesaid contract rights to July 1, 1985, with the same obligations as to annual compensation and on the further condition that royalties would be paid from January 1, 1909 instead of July 1, 1916.

9. For excess profits tax purposes the taxpayer corporation adopted the invested capital method for reporting its income. In its return for the year 1940 the taxpayer under such method evaluated the interest it acquired from Parker and Irby on July 8, 1905 at $500,000. It claimed an annual amortization of $6250 for a total of 34½ years, or a total of $215,625 and a balance of $284,375 was thus reported as equity invested capital for 1940.

10. In the audit of the taxpayer's return the Commissioner of Internal Revenue adjusted the value of the contract from $284,375 to $90,000. The adjustment caused the additional tax of $548.25 which was paid on October 17, 1941, and is now sought to be recovered in this suit.

The statutes and regulations involved are set forth in the margin.[1]

In its claim for refund and in the complaint, the taxpayer contended that the contract in suit has a value of $284,375. But apart from certain documentary evidence hereinafter referred to, the evidence offered with respect to valuation was that stock having a par value of $500,000 was issued in exchange for the the contract,

---

[1] Internal Revenue Code:

"Sec. 113. Adjusted Basis for Determining Gain or Loss.

"(a) Basis (Unadjusted) of property. The basis of property shall be the cost of such property; except that—

\* \* \* \* \* \* \*

"(14) Property acquired before March 1, 1913. In the case of property acquired before March 1, 1913, if the basis otherwise determined under this subsection, adjusted (for the period prior to March 1, 1913) as provided in subsection (b), is less than the fair market value of the property as of March 1, 1913, then the basis for determining gain shall be such fair market value. In determining the fair market value of stock in a corporation as of March 1, 1913, due regard shall be given to the fair market value of the assets of the corporation as of that date." 26 U.S.C.A.Int.Rev.Code, § 113.

"SUBCHAPTER E—EXCESS PROFITS TAX

PART 1

"Sec. 710 Imposition of tax

"(a) Imposition.—There shall be levied, collected, and paid, for each taxable year beginning after December 31, 1939, on the adjusted excess profits net income, as defined in subsection (b), of every corporation (except a corporation exempt under section 727) a tax as follows:

\* \* \* \* \* \* \*

"Sec. 714. Excess Profits Credit—Based on Invested Capital

"The excess profits credit, for any taxable year, computed under this section, shall be an amount equal to 8 per centum of the taxpayer's invested capital for the taxable year, determined under section 715.

"Sec. 715. Definition of Invested Capital

"For the purposes of this subchapter the invested capital for any taxable year shall be the average invested capital for such year, determined under section 716, reduced by an amount computed under section 720 (relating to inadmissible assets). \* \* \*

"Sec. 716. Average Invested Capital

"The average invested capital for any taxable year shall be the aggregate of the daily invested capital for each day of such taxable year, divided by the number of days in such taxable year.

"Sec. 717. Daily Invested Capital

"The daily invested capital for any day of the taxable year shall be the sum of the equity invested capital for such day plus the borrowed invested capital for such day determined under section 719.

"Sec. 718 Equity Invested Capital

"(a) Definition.—The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b)—

"(1) Money paid in.—Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital;

"(2) Property paid in.—Property (other than money) previously paid in (regardless of the time paid in) for stock,

292

and that the men who controlled the corporation and fixed such value were good and able business men. On the basis of this showing the taxpayer maintains that because the interested parties, some forty-three years before, fixed the value in the manner and at the amount of the par value of the stock as above stated, the Commissioner was bound to do likewise. We think differently.

The par value of a stock does not establish its true worth. And "the fact that stock of a certain *par* value is given for something is no evidence of the *actual* value of that thing for the purpose of computing invested capital." Appeal of Pacific Baking Company, 2 B.T.A. 391, 392. Furthermore, the valuation claimed by the taxpayer is clearly erroneous since it is the alleged value as of 1940 based on an original alleged value of $500,000. The applicable regulations clearly provide that in evaluating property the basis to the taxpayer is the unadjusted basis or

cost. They hold further that if the basis to the taxpayer is cost and stock was issued for the property, the cost is the fair market value of such stock at the time of its issuance. If the stock had no established market value at the time of the exchange, then it is necessary to determine the fair market value of the property itself. In McKinney v. Commissioner of Internal Revenue, 32 B.T.A. 450, 456, affirmed 10 Cir., 87 F.2d 811, the Board of Tax Appeals had occasion to consider the well settled rule with regard to the cost of property acquired by a corporation for its stock and said:

"It is well settled that the cost to a corporation of the property acquired through the issuance of its capital stock is the fair market value of such capital stock on the date issued, and where all of the capital stock of a corporation is issued for property and there is no other method of measuring the fair market value of the stock so issued, such fair market value

---

or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange. * * * If such unadjusted basis is a substituted basis it shall be adjusted, with respect to the period before the property was paid in, in the manner provided in section 113 (b) (2);"

Title 26 Internal Revenue Acts Beginning 1940, 26 U.S.C.A.Int.Rev.Code, §§ 710, 714-718. This subchapter was added to the Internal Revenue Code by act of October 8, 1940, c. 757, Title 2, Sec. 201, 54 Stat. 975.

Treasury Regulations 109, promulgated under the Internal Revenue Code:

"Sec. 30.718–1. Determination of daily equity invested capital—Money and property paid in.—The equity invested capital for any day is determined as of the beginning of such day. The basis or starting point is found in the amount of money and property previously paid in for stock, or as paid-in surplus, or as a contribution to capital. For the purpose of determining equity invested capital, the amount of any property paid in is the unadjusted basis to the taxpayer for determining loss upon a sale or exchange under the law applicable to the taxable year for which the invested capital is being computed. If the property was disposed of before such taxable year, such unadjusted basis shall be determined as

if the property were still held at the beginning of such taxable year.

"If the basis to the taxpayer is cost and stock was issued for the property, the cost is the fair market value of such stock at the time of its issuance. If the stock had no established market value at the time of the exchange, the fair market value of the assets of the company at that time should be determined and the liabilities deducted. The resulting net worth will be deemed to represent the total value of the outstanding stock. In determining net worth for the purpose of fixing the fair market value of the stock at the time of the exchange, the property paid in for such stock shall be included in the assets at its fair market value at that time.

"If stock having no established market value is issued for intangible property, and it is necessary to determine the fair market value of such property, the following factors, among others, may be taken into consideration in determining such value: (a) The earnings attributable to such intangible assets while in the hands of the predecessor owner; and (b) any cash offers for the purchase of the business, including the intangible property, at or about the time of its acquisition. A corporation claiming a value for intangible property paid in for stock should file with its return a full statement of the facts relating to such valuation. * * *"

on that date may properly be determined to be the equivalent of the fair market value of the property received. Reliance Investment Co. v. C. I. R., 22 B.T.A. 1287; Meade Realty Co. v. C. I. R., 21 B.T.A. 1062; L. H. Philo Corporation v. C. I. R., 16 B.T.A. 130; John Glackner Realty Corp. v. C. I. R., 11 B.T.A. 151; Realty Sales Co. v. C. I. R., 10 B.T.A. 1217."

In the case at bar the basic date is July 8, 1905, the date on which the taxpayer acquired the contract from Parker and Irby. Inasmuch as stock was issued for the property or contract and the stock was closely held and had no established market value, the taxpayer was obliged to prove the fair market value of the contract itself as of July 8, 1905.

In this connection the pertinent regulations provide that "if stock having no established market value is issued for intangible property, and it is necessary to determine the fair market value of such property, the following factors, among others, may be taken into consideration in determining such value; (a) the earnings attributable to such intangible assets while in the hands of the predecessor owner; (b) any cash offers for the purchase of the business including the intangible property at or about the time of its acquisition." In the instant case the taxpayer tendered in evidence an exhibit showing dividends paid to its stockholders from 1906 to December 31, 1928, but it has not shown the earnings of Sherousse and Mrs. Baldwin, the predecessor owners, and it has offered no evidence with respect to any cash offers that might have been made for the purchase of the business at or about the time of its acquisition. In the absence of other evidence the subsequent earnings of the taxpayer cannot be the basis for determining the value of the contract. St. Paul Steam Laundry v. Commissioner of Internal Revenue, 6 B. T.A. 529.

Nor can the taxpayer derive any comfort from the fact that a greater value was allotted to the contract when it was under consideration by the Board of Tax Appeals in 1926. That proceeding, docket No. 15,990, respecting the years 1920 and 1921 was concerned with the value of the contract as of March 1, 1913, and not as of July 8, 1905. The tax years involved were different and the statutes applicable were not the same and it may be pointed out that computation of invested capital under the Revenue Act of 1921 and the Second Revenue Act of 1940 are different. In accordance with Section 326(a) (4) of the Revenue Act of 1921, Chapter 136, 42 Stat. 227, 274, which is not true under the applicable statutes here, invested capital means "intangible property bona fide paid in for stock or shares prior to March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in, (b) *the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding on March 3, 1917, whichever is the lowest.*" (Emphasis supplied.) The contention that the value established as a result of the stipulated deficiencies in the Board of Tax Appeals proceeding should be controlling here is neither persuasive nor does it find support in the authorities. Tait v. West Maryland Railway Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405.

The difficulty or impossibility of proving at this late day the material facts upon which the right to relief depends does not excuse or relieve the taxpayer of its burden, and we must take the record as we find it. Burnet v. Houston, 283 U.S. 223, 51 S.Ct. 413, 75 L.Ed. 991. The only evidence here of value is the price of $50,000 that Parker and Irby paid for the contract nine days before it was transferred to the taxpayer for stock. There is nothing in this record to show a value in excess of that figure. Consequently it cannot be said that the taxpayer has proved that the Commissioner erred in allowing a value for the contract of $90,000. It will be recalled that when Parker and Irby purchased the contract on June 29, 1905, it had only 130 months to run. The taxpayer maintains that the contract had a value of $4615.38 per year for the remainder of the term and that this is so because 12/130 of $50,000 equals $4615.38, and that considering the rate of $4615.38 per year

294

which Sherousse and Mrs. Baldwin exacted for the surrender of the unexpired 10 and 10/12 years terms, it follows that the contract covering a term of 30 years which Parker and Irby paid in for the capital stock of plaintiff had a contemporary value of $138,461.40. The argument is not convincing. The price of $50,000 was paid for the contract as a whole and it by no means follows that each year was worth $4615.38. The determination of value presents a question of fact. "The value of property at a given time depends upon the relative intensity of the social desire for it at that time, expressed in the money that it would bring in the market." Ithaca Trust Co. v. United States, 279 U.S. 151, 155, 49 S.Ct. 291, 292, 73 L.Ed. 647. It is a fact which must be established by affirmative proof and its ascertainment cannot be demonstrated by this easy mathematical formula.

 The inherent weakness of taxpayer's position is its unwillingness to face the realities. The facts show that Parker and Irby purchased the contract from Sherousse and Mrs. Baldwin on June 29, 1905, and that on the same day they secured an extension from Dr. Tichenor giving them the sole right to manufacture and sell the refrigerant for a period of thirty years beginning on July 1, 1905. Turning now to paragraph 10 of the last mentioned contract, we find these provisions: *"This contract is conditioned upon, and shall not be in effect until and unless said parties of the second part shall have purchased from J. M. Sherousse and Mrs. A. L. Baldwin all their rights under a contract entered into between the party of the first part and the said J. M. Sherousse and Mrs. A. L. Baldwin of date, May 9, 1893, and modified by supplemental agreement of date, August 14, 1895.* If said parties of the second part shall not have purchased said rights within thirty (30) days from date, this contract to be ipso facto null and void without any notice or putting in default whatsoever. * * *"* (Emphasis supplied.) Considering these conditions of the contract, there can be no doubt but that prior to the time of the purchase of the original contract for $50,000 Parker and Irby had

already secured an extension from Dr. Tichenor permitting them to manufacture and sell his compound until July 1, 1935. It therefore follows that Parker and Irby knew when they paid $50,000 for the contract that actually and in reality they were purchasing the right to manufacture and sell the refrigerant not for 10 years and 10 months, but for 30 years. If then the taxpayer's theory is to be applied in establishing a value per year, the thirty year term should be used and not the shorter period, for that is the term which Parker and Irby had in mind when they paid the $50,000, and if this is done the contract cannot be valued in excess of that figure.

Conclusions of Law

For the foregoing reasons the court concludes as a matter of law that the taxpayer has failed in its proof, and the complaint should be dismissed at taxpayer's costs.